POLICEMEN'S ANNUITY AND BENEFIT FUND OF the CITY OF MILWAUKEE, and George H. Sprague, both plaintiffs individually and as representative of a class consisting of City of Milwaukee Police Officers hired prior to 1948 who participated as members of the Policemen's Annuity and Benefit Fund System, and Ruth Ackmann, Gilbert C. Armbruster, Phyllis C. Bailey, Robert Baker, John W. Balcerak, Vladimir V. Barak, Elizabeth Barnes, Hildegarde Barg, Ethel G. Bartelt, Theresa Bartl, Alphonse P. Bauer, Dolores Baumann, Samuel Bay, Eugene W. Bebo, Esther B. Beck, Raymond J. Bednarek, Harold F. Behling, Virginia Behrendt, Violet Behrens, Franz Belot, Allen H. Bence, Howard C. Bentz, Ruth L. Berg, Gustav C. Bergemann, Leona Bett, Leona Bevsek, Agnes M. Beyer, Elsie V. Bilty, Richard W. Bohmer, Margaret M. Booton, Leocadia Borkowicz, Adele Brasile, Mildred Breidenbach, Harold A. Breier, Harold Breitlow, Elizabeth A. Brelsford, Hazel Brown, Ralph J. Brown, Mildred A. Bruss, Florence A. Budich, Evelyn Buege, Andrew Busalacchi, Edward F. Domask, Ann Doro, Mariann Dorow, John Dotski, Betty J. Drake, Anna J. Dunham, Harry E. Dunn, Jr., Mardella B. Eckhardt, Raymond A. Ehmke, Margaret M. Eichman, Vera M. Eichstaedt, Edmund H. Eigenfeld, Virginia Einem, Milton A. Engbring, Leone Erfert, William Ericsson, Chester R. Esch, Lucille Evans, Clara S. Evenson, Eileen Evica, Ruth Fabich, Isabelle C. Faubel, Dolores L. Feilen, Mary Ann Feilen, Florence T. Filipiak, Irene M. Fischer, Julia M. Fisher, Sylvia Freismuth, Florence Freund, Dorothy Frischmann, Glyn Fuglesang, Ruth Gaertner, John O. Galler, Ethel Gal-

ligan, Hermine Garms, Florence A. Gelhar, Marianne Gilbert, Florence Girard, Elsie Gleisner, Virginia J. Glembin, Marvin R. Godfried, Frances G. Goehle, Norma Goehlen, Tobias J. Golembiewski, Sylvia Gorniak, John W. Grantz, Henrietta Granum, Rosemary Greinke, Theresa F. Gust, Estelle Guttowski, Mary Guzinski, Laverne J. Guzman, Stanley Gwiazdowski, Louis J. Habel, Dorothy L. Haensgen, Genevieve Hanley, Dora I. Harris, Ewald J. Hartmann, Marie Heibler, Hulda E. Heidelberg, Rose M. Hein, Walter D. Heller, Esther Helm, Mary Helz, Edmund M. Hemmen, Edwin F. Henke, Emilie C. Henrich, Rachel Hensler, Harold J. Hermann, Frances M. Herold, Rachelle Heyse, Herbert L. Hinstorff, Stella Hoffmann, Gertrude A. Horsch, Winifred Hubbard, Donald W. Huffer, Lorraine Huml, Edward W. Ihlenfeld, Gregory F. Isermann, Charles E. Jaeck, Ann Jaeger, Ronald Jaeger, Leroy A. Jahnke, Alvina Jakubiak, Robert H. Jamrozy, John A. Jarvella, Bruno J. Jedrzejewski, Lucille M. Jefferies, Chester B. Jelinski, Howard L. Jennrich, William S. Jens, Earl M. Jenson, Helen C. Jeske, Dolores M. Johnson, Edgar R. Jones, Frances H. Julien, Edmund L. Jurkowski, Edwin W. Justen, Leone Kahne, Norma Karpinski, Chester R. Kasinski, Ervin F. Kasprzak, Marion V. Kassow, Henry R. Kasza, Eva Katsekes, John Kenzoria, Bertha J. Kieckhefer, Evelyn A. Kind, Bernice King, Theresa Kirsch, Ruth D. Klann, Casimir Klapczynski, Wilbur H. Klasen, Frank Klein, William J. Klippel, Otto Knapke, Dorothy E. Knueppel, Doris Knuth, Cecelia F. Koch, Gladys Koenig, Leo Koenig, Robert W. Koepp, Sara M. Koepp, Lyle W. Kohn, Doris I. Komperda, Edward Kondracki, Estelle Konz, Leo Kopecki, Mary J. Kopsar, Stanley A. Korbar, Mercedes Kottke, Arthur H. Kranich, Vernell Kras-

nan, Rudolph E. Krause, Arthur G. Krebs, Louise Kremsreiter, Helen M. Kresnicka, Dorothy M. Kropkat, Norman L. Kruse, Edward M. Kubiak, Henry J. Kubiak, Gladys H. Kuehnel, Ruth W. Kuhn, Harry J. Kuhr, Ann Kurek, Richard Kurowski, Angeline C. Kuszewski, Peter J. Kuzniewski, Stephen Kwasniewski, Mary T. Kwiatkowski, Phillip L. LaPorte, Lucille G. Laabs, Ervin C. Landowski, Pearl Lange, Gladys Lauby, Evalyn Lavann, Florence O. Lavin, Walter Lazowski, Fritz Lehto, Hazel Lemke, Mary Lepak, Ruth E. Lewin, Dorothy Liebscher, Hildagard Liederbach, Ralph E. Lietz, Irma Lindemann, Arlene I. Lund, Luella Lund, Ethel C. Maass, Alois Machnik, Stephen C. Magenheim, Harriet M. Mahlberg, William J. Mann, Clarence Mantei, Evelyn D. Mantz, Ferdinand J. Meyer, Theron A. Meyer, Beatrice Michalzik, Joseph A. Michuda, Emil F. Milo, Eleanore E. Miotke, Joseph J. Miszewski, Theodore B. Mizak, Gordon Moll, Alexia M. Morawetz, Gloria H. Morrell, Ben Morrow, Bernice Mozach, George Muehlbauer, Lauretta Muenchow, Gladys Multhauf, Olive Murray, Edith Nagy, Joyce D. Nauertz, Frank Nawrocki, Bessie Neff, Dorothy Nelson, Eleanore Nennig, George A. Nielsen, Richard Niemann, Dolores Nimmer, Estelle M. Obst, Robert J. O'Connor, Ruth E. Ohde, Allen W. Oldenburg, Florence M. Olson, Irene Opolak, Regina J. Oppmann, Margaret Orlick, Martha Ostermeyer, Joseph Pagliano, Anthony J. Pakulski, Lawrence J. Papke, John Papp, Genevieve Pares, Jeanette E. Petermann, Marie Petersdorff, Caroline Pfeil, Tony H. Pike, Grace A. Pittenger, Marina Plant, Clara L. Plate, Selma Plinska, John Podlesnik, Josephine Pogorelc, Richard T. Polsen, Cecelia L. Popper, Anthony Primozich, Evelyn Quandt, Howard E. Radtke, Lillie E. Raiter, Greta

Rasmussen, Raymond P. Raths, Myron R. Ratkowski, Lambert F. Rehorst, Harold J. Reinelt, Minnie Cox Reiter, Mary H. Reitz, Howard A. Ritzman, Kenneth F. Roberts, Robert L. Roepke, Peter Rokich, Dorothy M. Roubik, Mary Rowe, Mary S. Ruehle, Bernice Rutkowski, Helen G. Rybka, Gladys C. Salapa, William G. Schendel, Betty Fay Schiefelbein, Dorothy F. Schmid, Helmuth G. Schmidt, Jack E. Schmitt, Freda Schneider, Gertrude M. Schneider, Irene Schoknecht, Clara M. Schramm, Earl W. Schroeder, Lillian Schultz, Harley Schwertfeger, Alma Seelow, Howard R. Senn, Annette E. Shaffer, Florence Sigg, Richard F. Sinski, Esther Slottke, Raymond L. Sokol, Peter Sokop, Harold Sommerfield, Theodore R. Sonju, Mary Sorgi, Anice M. Spees, Zanana Spencer, Katie Spende, George H. Sprague, Jerome J. Springer, Stanley St. Onge, Mary E. Stark, Marion W. Stephen, Harriet Stolz, Esther D. Stout, Ethel L. Strachota, Mary A. Stroede, Mary A. Strzyzewski, Karl R. Stuhmer, Isabelle Surges, Michael Sworske, Jack C. Sylvester, Florence Szczepanski, Marie Teevan, Elsie Tellefson, Mary A. Tesch, Clara Tesmer, Gertrude Tieffenbach, Earl H. Tietyen, Dorothy H. Tietyn, Evelyn J. Todryk, Margaret Torcivia, Leonard Trinastic, Helen Ulatowski, Veronica Ullenberg, Roy V. Ullius, Regina R. Urbanek, Dorcas E. Vlcansky, Grace Voeks, Andrew H. Voss, Ben J. Wacker, Charles O. Waedekin, Jeanette E. Wahlen, John F. Walenta, Eleanor Walters, Clara Waterhouse, Ruth Weber, Gerda M. Weidner, Frank Weis, Maude W. Wellauer, June V. Wheeler, Agnes White, Louis Wiesmueller, Antola Wilburn, Kenneth A. Wille, Melvin L. Wingert, Mabel E. Winkelmann, Janet Winter, Edna M. Wissing, Richard Wissmueller, Antoinette Witt, Josephine Wittig, Ralph W. Wobszal, Frances J. Wolf, Anne Wolke,

August Yanke, Estelle Zakrzewski, Norman Zastrow, Harold F. Zemlicka, Ruth M. Zenda, Evelyn Zepecki, Alice Ziemann and Ruth L. Zimdars, Plaintiffs-Appellants,

v.

CITY OF MILWAUKEE, Defendant-Respondent.†

Court of Appeals

*No. 99–0965. Oral argument February 14, 2001.—Decided April 17, 2001.*

**2001 WI App 144**

(Also reported in 630 N.W.2d 236.)

†Petition to review dismissed.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *John F. Fuchs* and *Marcia A. Snow* of *Fuchs Snow & DeStefanis, S.C.*, Milwaukee. There was oral argument by *John F. Fuchs*.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Matthew W. O'Neill* and *Lawrence J. Glusman* of *Friebert, Finerty & St. John*, S.C., Milwaukee. There was oral argument by *Matthew W. O'Neill*.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

¶ 1. WEDEMEYER, P.J. The Policemen's Annuity and Benefit Fund of the City of Milwaukee ("PABF") and George H. Sprague, et. al, appeal from a summary judgment dismissing a declaratory judgment action against the City of Milwaukee. PABF claims the trial court erroneously ruled that: (1) no express or statutory trust was created to require the City to make "in lieu" widow's annuity and other contributions from 1969 to 1989; (2) the six-year statute of limitations in Wis. Stat. § 893.43 (1999–2000) bars PABF's claim; and (3) the City is not estopped from raising a statute of limitations defense. PABF further posits two bases for

relief not addressed by the trial court: (1) equity requires the imposition of a constructive trust as a result of the City's failure to make the required payments; and (2) the doctrine of laches does not bar PABF's action. Because equity requires the imposition of a constructive trust, and because neither laches nor the statute of limitations bars this action, we reverse.[1]

## I. BACKGROUND

¶ 2. Prior to July 30, 1947, police officers hired by the City of Milwaukee became members of the PABF, which is a retirement system that provides pension and other retirement benefits to its members and their beneficiaries.[2] The PABF is governed by Chapter 35 of the Milwaukee City Charter, which was amended in 1969 to provide that the City make "in lieu" contributions to the fund on behalf of the police officer members and their beneficiaries for widow's annuity and other benefits. The City was to pay a sum not to exceed 6% of the earnable compensation paid a police officer who was still eligible for fund contributions.

¶ 3. The City had authority over the fund, and could amend the provisions, provided it did not modify the annuities and associated benefits of the person who became a member of the system prior to the effective date of any amendment. The retirement act, codified at 35–01–67 of the Milwaukee City Charter, provides that officers and their beneficiaries have vested rights to annuities and benefits that shall not be diminished or

---

[1] Based on our disposition, we need not address PABF's additional arguments based on express/statutory trust and estoppel. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issues need to be addressed).

[2] All police officers hired after this date became members of the Milwaukee Employes' Retirement System.

impaired by subsequent legislation without the officers' consent. The act provides a lifetime widow's annuity with required contributions until an officer turns fifty-seven years old and optional contributions after that time. It provides that a police officer who continues working after turning fifty-seven may elect to continue making widow's annuity contributions to the fund. If an employee elects to do so, 4.625% of earnable compensation is deducted until the officer completes twenty-five years of service and then 4.125% of earnable compensation is deducted until employment ends. The deductions are credited to the widow's annuity account in the salary deduction fund. If the employee elects to continue making those deductions, the City has to contribute 2.5% of earnable compensation.[3]

¶ 4. In June 1995, Sprague, then the President of the PABF Board, discovered that the City was not making the "in lieu" payments. Sprague contacted the City to address the error. The city attorney initially denied that the City owed anything to the PABF, and later revised the opinion to state:

---

[3] The parties dispute what was the appropriate procedure to elect to continue contributing to the widow's annuity fund. The City contends that the statute requires the officers who want to so elect to provide notice in writing of such election; i.e., to "opt-in." The PABF contends that at the time this portion of the act was promulgated, the officers were notified that any who did not want to continue making the contributions must notify the PABF board in writing; i.e., to "opt-out." If the officer took no action, he or she was deemed to have elected to continue the widow(er)'s annuity deductions. Resolution of this dispute, however, is not germane to the issues ripe for our consideration and therefore, we will not address it.

In the event an active future entrant of the Policemens' [sic] Annuity and Benefit Fund made the requisite election under sec. 35.01 (72) in a timely manner, the City would have to make the additional employe[e] contribution for widows' annuity of 4.625% of earnable compensation until the completion of 25 years of service and the 4.125% of earnable compensation thereafter and, in addition, make a City contribution for widows' annuity of 2.5% from each payment of salary for service rendered after age 57. For future entrants in excess of 57 years with 25 years of service who make the requisite election, the requisite contributions shall be as follows: 0% for employe[e] contributions for age and service annuity, 4.125% for employe[e] contributions for spouse annuity and 2.5% for employer contribution for spouse annuity, bringing the total City contribution to 6.625% of earnable compensation.

¶ 5. Sprague requested that the City fund an audit to determine when the deficiency in City contributions began. The City conducted the audit, but limited the scope to the six previous years, 1989–1995, based on the city attorney's opinion that a six-year statute of limitations applied. The audit revealed that the City had failed to properly fund the PABF for the entire six-year period. The City agreed to make up the deficit for that six-year period.

¶ 6. PABF brought this declaratory judgment action alleging that the City was required to make the "in lieu" widow's annuity and other contributions it neglected to make from 1969 to 1989. In its answer, the City admitted it had failed to make the required payments, but that the action was barred by the statute of limitations and laches. The trial court ordered the par-

207

ties to address these issues. Both sides filed cross-motions for summary judgment.

¶ 7. PABF argued that the fund constitutes an express, statutory trust or, in the alternative, a constructive trust and, therefore, the statute of limitations defense does not apply. PABF argued that equity does not favor applying the doctrine of laches, and that even if the statute of limitations applies, the City should be estopped from relying on it.

¶ 8. The trial court ruled that: (1) no trust relationship was created; (2) the six-year statute of limitations barred the action seeking contributions before 1989; and (3) estoppel did not preclude the application of the statute of limitations because PABF did not rely on anything the City did that was misleading. The trial court granted summary judgment to the City and dismissed PABF's complaint. PABF now appeals.

## II. DISCUSSION

¶ 9. This case comes to us after a grant of summary judgment. Our methodology in reviewing summary judgments is well known and need not be repeated here. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Our review is *de novo*.

### A. *Constructive Trust.*

¶ 10. PABF contends that the facts presented here require the imposition of a constructive trust. We agree.

¶ 11. "A constructive trust is an equitable device created by law to prevent unjust enrichment." *Watts v.*

*Watts*, 137 Wis. 2d 506, 533, 405 N.W.2d 303 (1987). The primary purpose of this device is to prevent unjust enrichment of the party unfairly holding the property that justly belongs to another. *Duhame v. Duhame*, 154 Wis. 2d 258, 267, 453 N.W.2d 149 (Ct. App. 1989). Whether to impose a constructive trust is a discretionary determination, but should be imposed when property is "held by someone who in equity and good conscience should not be entitled to beneficial enjoyment" where the property was obtained "by means of actual or constructive fraud, duress, abuse of a confidential relationship, mistake, commission of a wrong, or by any form of unconscionable conduct." *Wilharms v. Wilharms*, 93 Wis. 2d 671, 679, 287 N.W.2d 779 (1980).

¶ 12. Here, the City, apparently through its own mistake, failed to make the "in lieu" of contributions to the fund, which were required by the collective bargaining agreement. The City promised to make the payments into the fund, and failed to do so. As a result, the City retained any and all amounts for its benefit. In addition, the City, through its own legislation, expressly stated that the PABF board was not to include in its annual certification the "in lieu" of contribution amounts. The City controlled all the data necessary to determine the amount of the required contributions, and there was little if any way to discover that the City was not satisfying its obligations. The City contends it was the PABF board's responsibility to catch any failure to contribute to the fund. In essence, however, the City is pointing a finger at itself because the city treasurer and another representative of the City were members of the five-member board. Under these circumstances, it would be unfair and unjust to allow the City to benefit from its mistake to the detri-

ment of the many police officers, who were relying on the "in lieu" of payments as part of a retirement package. Therefore, we agree that a constructive trust was created, and the City is responsible for paying the deficient amounts.

*B. Statute of Limitations.*

¶ 13. The City contends that it is not responsible for the deficient amounts prior to 1989 based on WIS. STAT. § 893.43, the six-year contract statute of limitations. We disagree for two reasons: (1) even if the statute was applicable, it was erroneously applied in this case; and (2) the City is estopped from using the statute of limitations.

### 1. Misapplication.

¶ 14. In *Jensen v. Janesville Sand & Gravel Co.*, 141 Wis. 2d 521, 415 N.W.2d 559 (Ct. App. 1987), we held that an action alleging a breach of a pension contract is an action to enforce a contract, not an action for wages and, therefore, the six-year statute of limitations under WIS. STAT. § 893.43 applied. *Id.* at 526. The question therefore becomes, in this matter, when the six-year statute of limitations began to run. In the context of a continuing right to receive a periodic payment due under a pension, "the statute of limitations runs from the time when an installment is due under the pension." *Id.* at 527. We noted, in *Jensen*, that where a continuing contract, such as a pension, is capable of partial breaches, an action may be brought within six years of any partial breach. *See id.*

¶ 15. We reached the same conclusion in *Welter v. City of Milwaukee*, 214 Wis. 2d 485, 571 N.W.2d 459 (Ct. App. 1997). In *Welter*, the City argued that the

six-year statute of limitations began to run from the effective date of each of a series of new ordinances, which lowered the age for duty disability retirees to convert to a lower benefit. *See id.* at 495–96. Welter argued that the statute would not begin to run until "an affected officer receives a pension installment that is less than it should be." *Id.* at 497. Relying on the statement in *Jensen* that receipt of a pension installment that was less than required by contract was a separate breach of that contract, *Jensen*, 141 Wis. 2d at 527, we concluded that Welter had "six years to sue on any pension installment that was less than it should have been." *Welter*, 214 Wis. 2d at 497.

¶ 16. As in *Welter*, each of the members of PABF was issued individual written benefit contracts incorporating the provisions mandated by §§ 35–01–67 and 35–01–69 of the Milwaukee City Charter. PABF alleges that the City breached these contracts because it failed to make the required "in lieu" contributions pursuant to § 35–04–01, Milwaukee City Charter, thereby lowering monthly widow's annuity payments and monies available in the annuity fund to pay for increased benefits for affected beneficiaries and retired policemen. Thus, based on *Welter*, each improper payment triggered the statute of limitations, rendering the current action timely filed.

2. Estoppel.

¶ 17. PABF also argues that the City should be estopped from relying on the statute of limitations defense. The City admits that it failed to make the proper payments, but argues that PABF should be

responsible for the mistake.[4] The City points to § 35–01–7(a) of the Milwaukee City Charter, which places the responsibility for collection of all the required funds on PABF. PABF concedes that under normal circumstances, ensuring that proper payments occur rests with the PABF board. However, the City thwarted the process of certifying the amounts due to the fund by amending the charter so that the certification would not include "the annual amounts required to be contributed by the City under any ordinance which may be in effect that requires the City to make contributions for the employees in lieu of their own contributions." Moreover, two representatives of the City were members of the board and therefore, in effect, the City was responsible to catch the error. We agree with PABF that the City should be equitably estopped from applying the statute of limitations.

¶ 18. Equitable estoppel is invoked when one side has engaged in fraudulent or wrongful conduct, and the other side has relied on the conduct to its detriment. *See Hester v. Williams*, 117 Wis. 2d 634, 644, 345 N.W.2d 426 (1984). The test as to whether a party should be estopped from asserting the statute of limita-

---

[4] At oral argument, counsel for the City suggested that if none of the officers elected to continue contributions to the widow's annuity fund, then the City would not concede that it failed to make the proper payments. The City's suggestion that of all the police officers involved, none elected to continue contributing to a fund to benefit his or her widow(er) is fallacious at best, given both statistical probability and the fact that this was a negotiated benefit after collective bargaining. At worst, the City's suggestion contradicts the record, and is inconsistent with its decision to make the payments for all of the entitled officers for the six years preceding the discovery of the mistake.

tions is "whether the conduct and representations of [the defendant] were so unfair and misleading as to outbalance the public's interest in setting a limitation on bringing [the] actions." *Id.* at 645 (citation omitted). Here, the City engaged in wrongful conduct by failing to make the "in lieu" of payments, which it was supposed to make pursuant to the bargaining agreement. The City determined how those payments would be made, and promised to safeguard the collected amounts for use by the officers during retirement. The PABF relied on the City to keep its promise, and it had no idea that the City failed to make such payments until Sprague's discovery in 1995. Once discovered, the PABF acted promptly to protect its rights. Under these circumstances, we agree that the City is estopped from asserting the statute of limitations to avoid its responsibility.

*C. Laches.*

¶ 19. The City also contends that the doctrine of laches bars the PABF's claim. We disagree.

¶ 20. "For laches to bar a claim, an unreasonable delay must occur, the plaintiff must know the facts and take no action, the defendant must not know the plaintiff would assert the right on which the suit is based, and prejudice to the defendant must occur." *Jensen,* 141 Wis. 2d at 529. Whether the doctrine of laches applies is fact-specific. *See Diehl v. Dunn,* 13 Wis. 2d 280, 286, 108 N.W.2d 519 (1961). The facts in this case do not support the application of the doctrine.

¶ 21. The obligation to make the "in lieu" of payments rested solely with the City. Because of the manner in which the contributions were reported to the PABF board, monitoring whether the correct payments

were being made was virtually impossible. The PABF's annual audit never revealed the error, nor did the independent audit conducted in 1986. When Sprague noticed the error, he immediately brought it to the attention of the City. When the City finally admitted the mistake, it agreed to make up the deficit only for the past six years, relying on the statute of limitations. PABF points out that the City should not be surprised by the fact that police officers and officers' widows(ers) would pursue retirement benefits that were bargained for and promised.

¶ 22. Applying the standard under these circumstances, we conclude that laches does not apply. PABF did not "know the facts and take no action." *Jensen*, 141 Wis. 2d at 529. Rather, it was operating under the assumption that the City was making the required contributions. It did not *know the facts*. We cannot enforce the doctrine of laches against PABF for not taking action before it knew of the City's mistake.

### III. CONCLUSION

¶ 23. In sum, we conclude that equity requires the imposition of a constructive trust for all of the "in lieu" of contributions to the fund, which were required from 1969 to 1989. We remand this matter to the trial court for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded.