STATE of Wisconsin EX REL. Marvin COLEMAN,
Petitioner-Petitioner,†

v.

Gary R. MCCAUGHTRY, Warden, Waupun Correctional Institution and Matthew J. Frank, Secretary, Department of Corrections, Respondents.

Supreme Court

No. 2004AP548–W. *Oral argument October 12, 2005.
—Decided May 18, 2006.*

2006 WI 49

(Also reported in 714 N.W.2d 900.)

† Motion for reconsideration denied; opinion modified. *See* 2006 WI 121.

For the petitioner-petitioner there were briefs by *Brian Kinstler* and *Kohler & Hart, LLP,* Milwaukee, and oral argument by *Brian Kinstler.*

For the respondents the cause was argued by *William L. Gansner,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. PATIENCE DRAKE ROGGENSACK, J. This case requires us to review the denial of Marvin Coleman's petition for writ of habeas corpus, which

alleged ineffective assistance of appellate counsel. The State asserted that his claim was barred by laches and the court of appeals agreed, dismissing Coleman's petition.

¶ 2. The State has the burden of proof in regard to all the elements of its laches defense. With that in mind and based on the record before us, we affirm the conclusion of the court of appeals that the State proved that Coleman unreasonably delayed in filing a petition for writ of habeas corpus as a matter of law. However, the factual record is insufficient for a reviewing court to decide whether the State suffered prejudice.[1] Therefore, we reverse and remand to the court of appeals for fact-finding to determine whether the State has been prejudiced by Coleman's unreasonable delay. The court of appeals shall select a method appropriate for fact-finding, either through the use of a special master or by remand to the circuit court.[2]

## I. BACKGROUND

¶ 3. On February 19, 2004, Coleman filed a petition for writ of habeas corpus in the court of appeals under *State v. Knight,* 168 Wis. 2d 509, 484 N.W.2d 540 (1992), asserting that his appointed appellate counsel

---

[1] The State claims that the only information it had about Coleman's appeal came from his petition that attached three letters between Coleman and appellate counsel. Coleman has not argued that the State had knowledge that he would assert an ineffective assistance of appellate counsel claim, so we conclude that element of laches is not at issue in this review.

[2] The court of appeals is without jurisdiction to make factual findings. *Wurtz v. Fleischman,* 97 Wis. 2d 100, 107 n.3, 293 N.W.2d 155 (1980).

was constitutionally ineffective because he failed to pursue an appeal from Coleman's 1986 Rock County convictions.

¶ 4. The criminal case that underlies Coleman's petition for habeas can be outlined as follows: in 1986, Coleman was charged with nine criminal counts. He moved to suppress evidence found in a search of Vanessa Henning's residence on Sunshine Street that supported the charged offenses. Henning testified at the suppression hearing that she consented to the search because she believed she had no choice after officers told her they would arrest her if she did not allow them to search her home. Henning's grandmother, present at the time of the search, testified to the same effect. Two Beloit police detectives testified that Henning had not been threatened with arrest. They also testified that on the day after the search of Henning's house, she contacted police to report that she had found additional clothing and a box containing bullets that belonged to Coleman. She asked that an officer come and get them. One of the officers also said that Coleman said he resided on Nelson Avenue with his aunt and uncle, and that he did not refer to Henning's house as his residence.

¶ 5. Coleman also testified. He said that he had been living at the Sunshine Street house; that he had been Henning's partner for six years; that he lived with her in her previous residence; and that he was the father of her children. The State emphasized that Coleman had not stayed at Henning's house continuously; that Coleman and Henning had broken up; that Henning had ordered Coleman out of the house; and that Coleman's belongings were in the basement in plastic bags at the time of the search.

¶ 6. The circuit court found that there was "clear and positive evidence" that Coleman was not a resident

of Henning's house on the date of the search. Without reaching the issue of whether Henning's consent to search was voluntary, the circuit court concluded that Coleman did not have standing to challenge the search and denied his motion to suppress. Coleman then pled guilty to all counts, which included sexual assault, armed robbery, theft, and battery. He was sentenced to eighty years imprisonment.

¶ 7. Coleman was appointed postconviction and appellate counsel after his plea, and he filed an unsuccessful motion for sentence modification in January of 1987. According to Coleman, his appellate counsel advised him that there was no chance of obtaining relief on appeal; therefore, he took no direct appeal.

¶ 8. The record before us includes three written communications between appellate counsel and Coleman over the course of almost a year that relate to the decision not to appeal. They provide a less than complete picture of what happened regarding this decision. For example, on June 1, 1987, appellate counsel wrote to Coleman at the Columbia Correctional Institution. He said:

> I write simply to confirm the agreement we reached on May 29, 1987.
>
> I told you that I thought you had no chance of obtaining any relief on appeal. You accepted my view and indicated that you did not want to pursue an appeal.

¶ 9. On May 17, 1988, Coleman wrote back to appellate counsel:

> I'm writing requesting my transcripts so that I may do the necessary research, that you fail [sic] to do for an appeal or post-conviction. Please do not close my appeal, if [a] deadline has not accured [sic].

By me gathering greater knowledge of law and ect. [sic] I come to know that you were not out to do your job, in helping me do the research for my appeal or post-conviction relief.

I know why you didn't do the best of your ability, its [sic] because your [sic] not the one who has to sit behind these bars each and everyday. No!, its [sic] me that will remain here for the rest of my life if nothing is done about it.

¶ 10. Appellate counsel wrote back to Coleman on May 23, 1988, and enclosed copies of police reports and transcripts. He stated:

In your letter you say that I failed to do the necessary research for an appeal or post-conviction relief in your case. I have to disagree with that. I did substantial research in an effort to find a way to obtain a reversal of the trial court's ruling on your suppression motion or to find a way to permit you to withdraw the guilty pleas you entered before Judge Dahlberg on May 28, 1986. You and I discussed different possible avenues of relief on January 16, 1987 and again on May 29, 1987. At that time you agreed with me that there was no hope for an appeal and told me not to pursue one. We had tried to have Judge Dahlberg modify your sentence. He denied that motion.

¶ 11. Coleman argues that he was denied effective assistance of appellate counsel because his attorney failed to appeal the Fourth Amendment issue regarding whether Henning consented to the search. He argues that, pursuant to *State v. Johnson,* 153 Wis. 2d. 121, 129, 449 N.W.2d 845 (1990) (citing *Strickland v. Washington,* 466 U.S. 668 (1984)), he is entitled to relief from his counsel's deficient performance because a reasonable attorney would have pursued the issue of consent,

and that there is a reasonable probability that but for counsel's deficient performance, he would have prevailed on appeal.

¶ 12. Coleman also claims United States Supreme Court precedent has established that one need not be a resident of the premises to have standing to challenge a search, so long as the individual has a reasonable expectation of privacy in the premises searched, which he claims to have had.

¶ 13. While noting that Coleman does not assert that he instructed postconviction counsel to pursue an appeal, the State focuses, not on the merits of the ineffective assistance of counsel claim, but rather, on the merits of its laches defense to the petition for habeas. The State acknowledges that the available information about the decision not to pursue an appeal does not reveal with particularity the process by which appellate counsel reached the conclusion that the Fourth Amendment issue was without merit. It also does not address the conversations counsel had with Coleman prior to Coleman's reaching the final decision not to appeal.

¶ 14. The State emphasizes that the record shows Coleman failed to take any action between 1987 and 2004 and that his failure not only supports part of the laches defense, but also reinforces the State's position that Coleman agreed not to pursue an appeal. Coleman does not assert that he requested counsel to appeal and counsel ignored his request. Counsel did file a motion for postconviction relief in regard to sentencing, but that was unsuccessful.

¶ 15. The State notes that it suggested to the court of appeals that the court consider directing appellate counsel to respond to the petition for habeas in regard to his ability to recall or reconstruct the circumstances surrounding his representation of Coleman.

360

The court of appeals chose not to do so. Instead, it concluded that Coleman's delay in petitioning for habeas was unreasonable and that the State was prejudiced by the delay. From those conclusions, the court determined that the State had proved its laches defense. This precluded an evidentiary hearing on the merits of Coleman's habeas petition. It is the court of appeals' decision on laches that we now review.

## II. DISCUSSION

¶ 16. A convicted criminal defendant has a right to postconviction relief that includes both a postconviction motion under Wis. Stat. § 974.02 (2003–04),[3] and a direct appeal, pursuant to the Wisconsin Constitution, Article I, § 21(1) and Wis. Stat. § 809.30. Once the time for direct appeal has passed, a defendant in a criminal case may collaterally attack his conviction pursuant to a Wis. Stat. § 974.06 motion, *Peterson v. State,* 54 Wis. 2d 370, 381, 195 N.W.2d 837 (1972), or via a petition for writ of habeas corpus. *Knight,* 168 Wis. 2d at 522. Coleman has properly chosen the last form under which to seek relief from his convictions because his claim is based on an allegation of ineffective assistance of appellate counsel. *Id.*

### A. Standard of Review

¶ 17. We must determine whether the court of appeals erred when it concluded the delay was unreasonable and presumed that the State had proven the

[3] All subsequent references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

prejudice element of its laches defense. We independently review the "legal issues arising in the context of a petition for habeas corpus." *State ex rel. Marberry v. Macht,* 2003 WI 79, ¶ 8, 262 Wis. 2d 720, 665 N.W.2d 155; *see also State ex rel. Hager v. Marten,* 226 Wis. 2d 687, 694, 594 N.W.2d 791 (1999). The question of whether laches applied to Coleman's petition requires a determination of the reasonableness of the delay in bringing the issue before the court; a determination that the State did not have knowledge that Coleman would be bringing this claim; and a determination of whether the State suffered prejudice due to the delay. *State v. Prihoda,* 2000 WI 123, ¶ 37, 239 Wis. 2d 244, 618 N.W.2d 857. Reasonableness is a question of law based upon factual findings. *See Lohr v. Viney,* 174 Wis. 2d 468, 477–78, 497 N.W.2d 730 (Ct. App. 1993). When the facts are known, we independently review reasonableness as a question of law. *State ex rel. McMillian v. Dickey,* 132 Wis. 2d 266, 277, 392 N.W.2d 453 (Ct. App. 1986). Prejudice is also a legal conclusion based on the facts surrounding the issues underlying the petition. *See Lohr,* 174 Wis. 2d at 477. If the defense of laches is proved, whether to apply laches and dismiss the habeas petition is left to the discretion of the court of appeals. *See id.* at 478.

B. Laches

1. General principles

¶ 18. A petition for writ of habeas corpus commences a civil proceeding wherein the petitioner claims an illegal denial of his or her liberty. *State ex rel. Zdanczewicz v. Snyder,* 131 Wis. 2d 147, 151, 388 N.W.2d 612 (1986). A habeas petition must contain a statement

of the legal issues and a sufficient statement of facts that bear on those legal issues, which if found to be true, would entitle the petitioner to relief. Wis. Stat. § 809.51(1); *State ex rel. Smalley v. Morgan,* 211 Wis. 2d 795, 802, 565 N.W.2d 805 (Ct. App. 1997). Habeas corpus relief is available only when the petitioner is being held in violation of a constitutional right or by a tribunal that lacks jurisdiction, and in either case, only when no other remedy at law is adequate to provide relief. *Marberry,* 262 Wis. 2d 720, ¶ 2. Habeas is an equitable remedy, *United States ex rel. Smith v. Baldi,* 344 U.S. 561 (1953), for which there is no constitutional right to counsel, *State v. Evans,* 2004 WI 84, ¶ 32, 273 Wis. 2d 192, 682 N.W.2d 784.

2. Laches tests

¶ 19. Wisconsin courts have used various tests for laches without explaining their differences or why they have used the tests that were chosen. The most commonly used test has three elements, but the elements are not always consistently stated. For example, in *Lohr* they are stated as: (1) unreasonable delay, (2) lack of knowledge of and acquiescence in the course of events by the party asserting laches and (3) prejudice to the proponent of the defense. *Lohr,* 174 Wis. 2d at 477. The first element in *Lohr* is attributed to the inaction of the claimant and the second and third elements are applied to the person asserting laches as a defense. *Id.*

¶ 20. In *Schafer v. Wegner,* 78 Wis. 2d 127, 254 N.W.2d 193 (1977), we stated the same three elements as, "(1) unreasonable delay, (2) lack of knowledge on the part of the party asserting the defense that the other party would assert the right on which he bases his suit, and (3) prejudice to the party asserting the defense in

363

the event the action is maintained." *Id.* at 132 (citing *Schneider Fuel & Supply Co. v. West Allis State Bank,* 70 Wis. 2d 1041, 1053, 236 N.W.2d 266 (1975)). More recently we applied this same three-element analysis in *Sawyer v. Midelfort,* 227 Wis. 2d 124, 159, 595 N.W.2d 423 (1999). In each case, the first element is attributed to inaction of the claimant and the second and third elements to the party who raised a laches defense.

¶ 21. Wisconsin courts have also used a four-element test that requires: "an unreasonable delay must occur, the plaintiff must know the facts and take no action, the defendant must not know the plaintiff would assert the right on which the suit is based, and prejudice to the defendant must occur." *Riegleman v. Krieg,* 2004 WI App 85, ¶ 22, 271 Wis. 2d 798, 679 N.W.2d 857 (citing *Policemen's Annuity & Benefit Fund of Milwaukee v. City of Milwaukee,* 2001 WI App 144, ¶ 20, 246 Wis. 2d 196, 630 N.W.2d 236). In *Riegleman,* the court applied the four-element test to determine whether a chiropractor's action to collect for services was precluded. The second element set out in *Riegleman,* whether the claimant knew the facts that gave rise to his claim and yet took no action, has been subsumed into the analysis of whether the delay in bringing the claim was "unreasonable." *Sawyer,* 227 Wis. 2d at 160 (concluding that a delay cannot be "unreasonable" until the claimant had, or should have had, knowledge that a defendant's acts were a cause of claimant's injuries).

¶ 22. Another frequently used laches test has only two elements: (1) unreasonable delay by the claimant and (2) prejudice to the party raising the laches defense.[4] *Evans,* 273 Wis. 2d 192, ¶ 49.

---

[4] There have been occasions when this two-element test has a preface to the first element, that the claimant has a cause of

¶ 23.　In 1984, in *Neylan v. Vorwald,* 121 Wis. 2d 481, 360 N.W.2d 537 (Ct. App. 1984), the court of appeals introduced the concept of "actual prejudice" in regard to the second element of a two-element laches test. *Neylan* involved a motion to set aside the dismissal of Neylan's claim, which dismissal had been entered one year earlier without notice. *Id.* at 485. Laches was raised by Vorwald. In introducing the concept of "actual prejudice," the court of appeals tied "actual prejudice" to short delays in bringing claims. *Id.* at 491. "Prejudice to defendants resulting from unreasonable delay may be presumed . . . but in cases where delay is more moderate or excusable, the need to show actual prejudice is proportionally greater . . . ." *Id.* at 491 n.5 (citing *Lyell Theatre Corp. v. Loews Corp.,* 682 F.2d 37, 43 (2d Cir. 1982)).

¶ 24.　The next time the concept of actual prejudice appears is in the two-element test used in *McMillian v. Dickey,* where laches was raised to a petition for habeas corpus. Citing *Baxter v. Estelle,* 614 F.2d 1030 (5th Cir. 1980), the court of appeals said, "[T]he state must demonstrate that it must suffer actual prejudice from the delay in its ability to respond to the grounds upon which habeas is sought." *McMillian,* 132 Wis. 2d at 281 n.14 (citing *Baxter,* 614 F.2d at 1032–33 & n.2). However, *Baxter* involved federal habeas that differs from the circumstances in which state habeas will lie,[5] and *Baxter* does not use the term "actual prejudice," although it

action against the defendant. *See Mut. Fed. Sav. & Loan Ass'n v. Wis. Wire Works,* 58 Wis. 2d 99, 111, 205 N.W.2d 762 (1973) (citing *McDonald v. McDonald,* 53 Wis. 2d 371, 192 N.W.2d 903 (1972)). We no longer list a "cause of action against the defendant" as an element because a cause of action must be present, as it is to that cause of action that laches is raised.

[5] We note that Wisconsin's rules on when a state habeas may be filed are more liberal than those applicable to federal habeas because since 1996, federal habeas corpus is available to

does conclude that prejudice was shown. *Baxter*, 614 F.2d at 1032–33.

¶ 25. In *Smalley,* again in the context of a habeas petition, the court of appeals employed a two-element test that requires that "actual prejudice" be shown by the state when it raises laches to a habeas petition. *Smalley,* 211 Wis. 2d at 800 (citing *McMillian,* 132 Wis. 2d at 281 n.14). While *Smalley* refers to laches and uses laches terminology, it appears to have conflated its analysis of the habeas petition's timeliness[6] with the unreasonable delay element of laches. Both laches and habeas petitions seek equitable relief, and they have some similar principles. For example, equitable remedies are not available to one whose own inaction results in the harm. *See State Bank of Drummond v. Christophersen,* 93 Wis. 2d 148, 160, 286 N.W.2d 547 (1980) (reviewing an appeal of a foreclosure judgment modification). While the analysis of Smalley's delay was prefaced with an explanation of laches principles,[7] the *Smalley* decision actually rests on the application of habeas prin-

a state prisoner for only one year after the state conviction becomes final, if the time is not tolled by collateral proceedings in state court. 28 U.S.C. § 2244(d)(1) and (2) (2000).

[6] The State has not argued that Coleman's habeas petition was untimely under the principles that we have set for evaluating habeas petitions. Therefore, we do not address whether Coleman has met his burden of proof in that regard.

[7] The court explained:

> As an equitable doctrine, habeas corpus is subject to the doctrine of laches. Where the delay on the petitioner's part was unreasonable and the State suffers actual prejudice from the delay in its ability to respond to the petition, dismissal on the grounds of laches may be warranted.

*State ex rel. Smalley v. Morgan,* 211 Wis. 2d 795, 800, 565 N.W.2d 805 (Ct. App. 1997) (citations omitted).

ciples.[8] For example, *Smalley* concluded by explaining that Smalley's claim was precluded by the insufficiency of the habeas petition itself.[9] The foundation for the decision in *Smalley* becomes readily apparent when the decision places the burden of proof for timeliness of the petition on Smalley, which is in accord with reviewing timeliness in regard to a habeas petition.[10] *Smalley*, 211 Wis. 2d at 802 n.7.

¶ 26. In *Evans*, where laches was not raised as an affirmative defense, but where a *Knight* petition[11] re-

---

[8] The court then went on to review Smalley's petition:

> The purpose of habeas corpus "is to provide a prompt and effective judicial remedy to those who are illegally restrained of their personal liberty." Smalley's petition does not allege facts demonstrating that he sought prompt and speedy relief. Such a showing is required.

*Id.* at 802 (citations omitted).

[9] The relevant language includes the following:

> We have considered whether our rejection of Smalley's petition as untimely runs afoul of *Flores* . . . . We conclude that it does not because Smalley's request for habeas relief must be evaluated under the standards applicable to such relief.

*Id.* (citations omitted).

[10] By contrast, the burden of proof for all of the elements of a laches affirmative defense rests on the party asserting the defense. *See Sawyer v. Midelfort,* 227 Wis. 2d 124, 159, 595 N.W.2d 423 (1999). However, if *Smalley* were read as an application of laches to a habeas petition, it could be misunderstood as holding that a party against whom laches is asserted has the burden of proving that the delay was reasonable.

[11] The proper procedural vehicle to bring an ineffective assistance of appellate counsel claim is a habeas petition pursuant to *State v. Knight,* 168 Wis. 2d 509, 522, 484 N.W.2d 540 (1992).

367

mained a possibility, we discussed a two-element test for laches and appeared to adopt the court of appeals statement that the state must show "actual prejudice" when it raises laches as an affirmative defense to a habeas petition. *Evans,* 273 Wis. 2d 192, ¶ 49.

¶ 27. However, in *Prihoda,* which addressed Prihoda's motion to vacate a clerical correction in sentencing, Prihoda raised laches to the clerical correction. *Prihoda,* 239 Wis. 2d 244, ¶ 35. There, we employed a three-element analysis that did not require Prihoda to show "actual prejudice." Instead, we said that Prihoda must prove: (1) unreasonable delay by the state; (2) his lack of knowledge that the state would make a clerical correction in his sentence; and that (3) he suffered prejudice due to the delay. *Id.,* ¶ 37.

¶ 28. *Prihoda, Sawyer, Lohr* and *Schafer* all employ a three-element test where the first element is unreasonable delay in bringing the claim and the other two elements apply to the party asserting laches: lack of knowledge (that the claim would be brought) and effect (prejudice). In *Neylan, McMillian, Smalley* and *Evans,* the first element is the same, unreasonable delay, but the second element of the two-element analysis is set out as "actual prejudice." When the delay is not extensive, the movant's lack of knowledge that the claim would be brought is important in assessing prejudice. *Neylan,* 121 Wis. 2d at 491 n.5. Stated otherwise, actual prejudice includes the concept that the party raising laches did not have knowledge that the claim would be brought and that he suffered prejudice because of the delay in bringing the claim.

¶ 29. Because it may be difficult to quantify "actual prejudice," we conclude that the three-element analysis of *Sawyer* and *Prihoda* provides the better analytic framework for assessing a laches defense than

does the two-element analysis set out in *McMillian, Smalley* and *Evans*. Carefully applied to the facts, assessing whether a party raising laches did not have knowledge that the claim would be brought will permit the circuit court to more fully apprise the effect of a claim that has been unreasonably delayed. For example, if the State had knowledge that Coleman would bring his claim of ineffective appellate counsel, but destroyed all the records that it possessed that were relevant to that claim, the State might be prejudiced in defending against the claim, but it would nevertheless fail on its laches defense.

3. Application of laches defense

¶ 30. The court of appeals concluded that Coleman unreasonably delayed in bringing his claim before the court because the alleged ineffective assistance of counsel occurred in 1987 and Coleman did not seek relief until 2004, 17 years later. The court of appeals pointed out that:

> Correspondence between Coleman and postconviction counsel in May 1988 shows that Coleman was aware of a potential suppression issue, was dissatisfied with counsel's decision not to appeal, intended to do his own research into the matter, and possessed the necessary transcripts and records to conduct that research. After that exchange of letters, however, Coleman apparently did nothing. There is no record of any request for court-appointed counsel, nor allegation that Coleman sought pro bono counsel or free legal assistance elsewhere. Nor does Coleman explain why he made no attempt to pursue relief without counsel, although he is literate, [and] presumably had access to his prison's law library . . . .

369

*State ex rel. Coleman v. McCaughtry,* No. 2004AP548–W, unpublished order at 2 (Wis. Ct. App. December 13, 2004).

¶ 31. The State asserts that the petition was filed more than 17 years after Coleman's conviction; the three letters between Coleman and appellate counsel suggest that appellate counsel assessed the merits of possible appellate issues, found them wanting and discussed his findings with Coleman. The letters also show that appellate counsel advised Coleman not to appeal and that Coleman accepted this decision. Furthermore, Coleman does not assert that he asked counsel to appeal and that counsel ignored his request.

¶ 32. The State also asserts that the lack of any record that Coleman tried to do anything relative to an appeal from 1988, when he was given the transcripts, until 2004 when he filed his habeas petition supports the court of appeals' conclusion that the delay was unreasonable. We agree that Coleman has made no showing of why he failed to attempt to bring his concerns before a court on a pro se basis, as so many incarcerated persons have.

¶ 33. Coleman does not dispute any of the facts argued by the State. Instead, he asserts he did not bring his claim before the court sooner because he was without legal knowledge or financial means to hire another attorney for a second opinion on the issue of an appeal until he married a woman with financial resources. We are unpersuaded. While his marriage may have provided the catalyst to bring a habeas petition, that fact does not explain away the uncontroverted fact that Coleman knew of his claim for more than 16 years but he did nothing, year after year. Accordingly, we

agree with the court of appeals that the State has proved Coleman's delay was unreasonable as a matter of law.[12]

¶ 34. However, the State must also prove that it was prejudiced because of Coleman's delay in bringing his claim. Here, the court of appeals assumed that because more than 16 years had passed since appellate counsel and Coleman discussed an appeal, counsel would have little or no recall of why he decided to recommend that an appeal not be filed or what he and Coleman discussed before he concluded that Coleman had agreed to counsel's closing the file.

¶ 35. The court interpreted Coleman's relinquishment of the right to appeal and the delay as follows:

> He initially accepted counsel's conclusion that he could not meritoriously appeal his convictions. Subsequently, Coleman had no access to appointed counsel, and no means to retain private counsel. It was only after his recent marriage that he could afford to retain the attorney who now represents him before this court.

*Id.* at 1–2. It concluded that Coleman's delay was unreasonable, and then assumed the delay prejudiced the State.

> Furthermore, the delay of seventeen years greatly prejudices the State, under any reasonable view. As a practical matter, the State cannot obtain counsel's testimony about his decision not to appeal, because counsel undoubtedly has little or no memory of the circumstances of that decision. If Coleman's appeal rights were reinstated, and he prevailed in the ensuing appeal, the delay would certainly preclude a remand for

---

[12] This conclusion should not be interpreted to mean that there are no conceivable circumstances under which a 16–year delay in filing a *Knight* petition would be reasonable. However, such circumstances are not presented by this appeal.

371

further proceedings on the suppression issue, although that would be the logical remedy. Additionally, if the evidence were ultimately suppressed, the State would have no practical means of retrying Coleman on the remaining evidence.

*Id.* at 2–3 (footnote omitted).

¶ 36. While the court of appeals' assumption may prove true, it is not the only possible outcome that could result from an inquiry of postconviction counsel. Therefore, it cannot be decided as a matter of law. To the contrary, appellate counsel may be able to recall or to reconstruct what happened during his communications with Coleman; what Coleman's response was; and how they reached the ultimate decision not to appeal. If he cannot, then the court of appeals is correct that the State suffered prejudice in being able to meet Coleman's claim of ineffective assistance of appellate counsel. But if counsel proves the assumption of the court incorrect, further proceedings on Coleman's claim of ineffective assistance will be required.

¶ 37. Accordingly, we agree with Coleman that based on the record before us, the court of appeals erred when it assumed the State was prejudiced by Coleman's unreasonable delay, instead of requiring the State to prove a factual basis for prejudice. Therefore, we reverse the court of appeals decision that laches precludes Coleman's petition for writ of habeas corpus, and we remand the matter to the court of appeals to decide how to develop a sufficient factual record.

### III. CONCLUSION

¶ 38. The State has the burden of proof in regard to all the elements of its laches defense. With that in mind and based on the record before us, we affirm the

conclusion of the court of appeals that the State proved that Coleman unreasonably delayed in filing a petition for writ of habeas corpus as a matter of law. However, the factual record is insufficient for a reviewing court to decide whether the State suffered prejudice. Therefore, we reverse and remand to the court of appeals for fact-finding to determine whether the State has been prejudiced by Coleman's unreasonable delay. The court of appeals shall select a method appropriate for fact-finding, either through the use of a special master or by remand to the circuit court.[13]

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded.

¶ 39. LOUIS B. BUTLER, JR., J. (*concurring*). Laches is an equitable defense based upon the petitioner's unreasonable delay in bringing an action under circumstances in which such delay is prejudicial to the defendant. *Sawyer v. Midelfort,* 227 Wis. 2d 124, 159, ¶ 74, 595 N.W.2d 423 (1999) (citation omitted). It is an affirmative defense, where the burden is on the defense to show that the plaintiffs unreasonably delayed in bringing the lawsuit. *Id.,* ¶ 75; *Becker v. Becker,* 56 Wis. 2d 369, 374–75, 202 N.W.2d 688 (1972). In the absence of any fact-finding proceedings that relate to Marvin Coleman's (Coleman's) habeas corpus petition, I fail to see how the majority can conclude that (1) the State proved that Coleman unreasonably delayed in filing his petition; or (2) the element of laches that the State had knowledge that Coleman would assert an ineffective assistance of counsel claim is not

---

[13] At the subsequent fact finding hearing in this habeas corpus proceeding, laches may be considered in regard to its effect on any potential issues, such as ineffective assistance of counsel, suppression or a retrial of the crimes of which Coleman stands convicted.

373

an issue in this review. Majority op., ¶ 2, including n.1. The effect of these conclusions is to shift the burden of proof to the petitioner, Coleman, and to render the court of appeals and this court into fact-finding bodies in excess of our respective jurisdictions.[1]

¶ 40. With respect to laches, what exactly is before this court, having been considered by the court of appeals? We have before us Coleman's February 19, 2004, habeas petition with attachments, and the State's response to the habeas petition. The petition alleges that in 1986, then 20–year-old Coleman pled guilty to nine felonies in Rock County Circuit Court. The petition alleges that Coleman applied for and received appellate counsel to represent him in any postconviction and appellate matters. The petition alleges that appellate counsel advised Coleman that "he had no chance of obtaining any relief on appeal," and that Coleman accepted that advice and pursued no appeal. The petition alleges that Coleman has since retained current counsel, and current counsel has concluded that Coleman had a meritorious and ultimately determinative challenge to the circuit court's denial of his suppression motion. The petition alleges that as a result, Coleman was deprived of effective assistance of appellate counsel. As to the reasons for delay in filing his petition, the petition alleges that Coleman initially accepted appointed counsel's advice, having no reason to question it, and it was not until he married years later that he acquired the monetary resources to retain counsel to review prior counsel's performance. The petition further alleges that Coleman was not entitled to appointed counsel.

---

[1] *See* majority op., ¶ 2 n.2, citing *Wurtz v. Fleischman*, 97 Wis. 2d 100, 107 n.3, 293 N.W.2d 155 (1980).

¶ 41. The attachments refer to three written communications between appellate counsel and Coleman, between May 1987 and May 1988, that relate to the original decision not to appeal. Majority op., ¶¶ 8–10. Of course, because these communications occurred approximately 16 to 17 years prior to Coleman's February 19, 2004, habeas petition, none of those attached communications refer to the delay or the reasons for the delay. The only communication from Coleman asked appellate counsel to "[p]lease do not close my appeal if the deadline has not accured [sic]".[2]

¶ 42. What was the State's response to Coleman's February 2004 habeas petition? "Respondents **LACK SUFFICIENT INFORMATION** to specifically address the allegation of deficient performance contained in Coleman's petition. . . ." (Emphasis in original.) The response asserted that the petition be deemed barred by laches. The response alleges that "*[i]t appears* that between 1988 and 2004, Coleman took absolutely no action to challenge the performance of his appellate counsel, although the legal means to do so was available to him." "*[T]here is no indication* Coleman was under any disability that precluded him from . . . seeking *pro se* a review of appellate counsel's performance before 2004." "*Coleman has not demonstrated* that he sought prompt, speedy relief as required by Wis. Rule § 809.51(1)." "This very substantial delay in pursuing his challenge to appellate counsel's performance is manifestly unreasonable." (Emphases added.)

¶ 43. No hearing was held to discern the facts behind the allegations in either the habeas petition or the State's response. Yet, this is not a situation where the facts are undisputed and there is only one reason-

---

[2] It appears that by then the deadline had passed.

able inference. *See Sawyer,* 227 Wis. 2d at 159 ("Where the facts are undisputed and there is only one reasonable inference, the court may conclude as a matter of law that the elements are met.") (citation omitted).

¶ 44. The State's response asserts that "it appears" that Coleman took no action between 1988 and 2004, but there is no way to know that absent a hearing. The State alleges that "there is no indication" that Coleman was under a disability that precluded pro se review of counsel's performance, yet not only was there no hearing on this point, but Coleman asserted that he relied on counsel's advice that his case lacked merit. This then presents a factual dispute as to why no pro se action was sought. The State finally maintains that "Coleman has not demonstrated" that he sought prompt, speedy relief as required by the habeas statute. Yet, not only does Coleman assert that he initially asked for an appeal, but his subsequent communication with appellate counsel a year later indicated that he still wanted an appeal. In addition to creating a factual dispute on this point, the State's argument clearly shifts the burden to the petitioner that laches should not apply, instead of leaving the burden on the party asserting the defense of laches, the State.[3] Given these factual disputes, it is clearly inappropriate for either the court of appeals or this court to decide this petition without further fact-finding. *Id.*

¶ 45. This case is not unlike *State ex rel. McMillian v. Dickey,* 132 Wis. 2d 266, 282, 392 N.W.2d 453 (Ct. App. 1986). In that action, the petitioner sought judicial

---

[3] The State's argument on the first two points would also relieve the State of its burden with respect to the affirmative defense of laches, as its position does not clearly establish who has to prove what, so that the inference is that the petitioner did not present enough here.

review of his probation revocation from 1974. *Id.* at 272. McMillian's case then languished in the circuit court in excess of eight years, with no transcript of the proceedings having ever been filed. *Id.* at 274. In denying his petition, the circuit court and the department faulted McMillian for "failing to 'pursue' his certiorari action in not making further demands or inquiries concerning the status of his case." *Id.* at 282. The court of appeals "reject[ed] this attempt to shift the blame for delay in the proceedings from those who have failed to act in the manner required by law to one who has complied with all legal requirements." *Id.*

¶ 46. Similarly, in this matter Coleman sought and received appellate counsel to represent him in postconviction and appellate matters. After initially being informed that his case lacked merit, his last known communication to appellate counsel asked counsel to keep Coleman's appeal open. In other words, Coleman took the steps he was legally required to take to pursue postconviction relief. Given the factual disputes that exist for the reasons for his delaying subsequent actions, and given the fact that the burden of proving laches falls on the party asserting that affirmative defense, this court should not be making factual findings based on Coleman's failure to establish or prove anything. *See Sawyer,* 227 Wis. 2d at 159.

¶ 47. I fully agree with the majority's observation that the court of appeals, in *State ex rel. Smalley v. Morgan,* 211 Wis. 2d 795, 565 N.W.2d 805 (Ct. App. 1997), "appears to have conflated its analysis of the habeas petition's timeliness with the unreasonable delay element of laches." Majority op., ¶ 25. The majority accurately observes that "[w]hile the analysis of Smalley's delay was prefaced with an explanation of laches principles, the *Smalley* decision actually rests on

the application of habeas principles." Majority op., ¶ 25. The majority correctly concludes that "[t]he foundation for the decision in *Smalley* becomes readily apparent when the decision *places the burden of proof for timeliness of the petition on Smalley,* which is in accord with reviewing timeliness in regard to a habeas petition." Majority op., ¶ 25 (emphasis added) (citation and footnote omitted).

¶ 48. Unfortunately, the majority conflates in exactly the same manner as the *Smalley* court its analysis of the habeas petitioner's timeliness with the unreasonable delay element of laches. In applying the laches affirmative defense to the facts of this case, the majority points out that "Coleman does not assert that he asked counsel to appeal and that counsel ignored his request."[4] Majority op., ¶ 31. This places the burden on Coleman as opposed to the State. The majority then agrees that "Coleman has made no showing of why he failed to attempt to bring his concerns before a court on a pro se basis, as so many incarcerated persons have."[5] Majority op., ¶ 32. The majority once again places the burden on Coleman. The majority then concludes that Coleman knew of his claim for more than 16 years, but that he did nothing.[6] Majority op., ¶ 33. Again, the

[4] As noted earlier, this "fact" is subject to dispute, as Coleman's last instructions of record to appellate counsel were to keep his appeal, not close his appeal. There was no hearing to resolve this factual dispute.

[5] As noted earlier, this "fact" is also subject to dispute, as Coleman alleged that he relied on appellate counsel's advice and lacked the means to hire another lawyer. Once again, there was no hearing to resolve this factual dispute.

[6] As noted earlier, this "fact" is also subject to dispute, as Coleman clearly asserts that he was not aware of the merits of his claim, having relied upon appellate counsel's advice, and

burden is placed on Coleman. In the absence of any hearing to determine the facts that exist in this matter, it is clear that the majority, instead of analyzing the laches defense offered by the State, has applied the timeliness factor under habeas principles in the same manner as the court of appeals in *Smalley*.[7]

¶ 49. On the basis of this record, in the absence of any hearing or fact-finding process, I conclude that the State has failed to meet its burden of proving that Coleman unreasonably delayed in bringing this claim, or that the State lacked any knowledge that Coleman would assert the right on which his habeas petition is based. As the majority has already determined that a remand is necessary to ascertain whether the State has been prejudiced by the delay, I would remand this matter to the court of appeals for a determination of all three elements of laches. Accordingly, I respectfully concur.

¶ 50. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice ANN WALSH BRADLEY join this concurring opinion.

---

lacked the means to hire counsel to review the merits of his claim until he married years later. Once again, there was no hearing to resolve this factual dispute.

[7] The opinion also raises a clear inference that the passage of time alone is enough to meet the unreasonable delay element of the laches defense. With this, I heartily disagree.