Daniel M. Zizzo, Sr.,
Plaintiff-Respondent-Cross-Appellant,

v.

Lakeside Steel & Mfg. Co. p/k/a The Kenosha
Boiler & Structural Company,
Defendant-Appellant-Cross-Respondent,

U.S. Bank p/k/a First Bank Southeast NA,
Bane-Nelson, Inc., Maurer Electric
p/k/a Maurer Electric Company, Inc., Frank J.
Smaniotto, Victor Misurelli, Defendants.

Court of Appeals

*No. 2007AP566. Submitted on briefs January 31, 2008.
—Decided April 30, 2008.*

2008 WI App 69

(Also reported in 752 N.W.2d 889.)

On behalf of the defendant-appellant-cross-respondent, the cause was submitted on the briefs of *Jonathan A. Mulligan* of *Davison & Mulligan, Ltd.* of Kenosha.

On behalf of the plaintiff-respondent-cross-appellant, the cause was submitted on the briefs of *Eugene J. Brookhouse* of *Brookhouse & Parise* of Kenosha.

Before Brown, C.J., Anderson, P.J., and Snyder, J.

¶ 1. BROWN, C.J. In 1989, Lakeside Steel & Manufacturing Co.[1] loaned Daniel Zizzo's parents some money and secured its loan with a mortgage on their property. The loan was to be paid off in monthly

---

[1] Lakeside was then known as the Kenosha Boiler and Structural Company.

installments beginning that year and ending in 1993. For unknown reasons, the Zizzos apparently never made a single payment, and Lakeside never attempted to collect or to foreclose on the mortgage. The elder Zizzos died and Daniel became owner of the mortgaged property. Still Lakeside did not take any action to enforce its mortgage. Finally, in 2005, Daniel Zizzo brought a declaratory judgment action asking the court to discharge the mortgage on several grounds, including laches. On summary judgment, the circuit court found Lakeside guilty of laches and extinguished the mortgage.

¶ 2. On appeal, Lakeside argues that Zizzo may not claim laches because laches is an affirmative defense and Zizzo is the plaintiff, rather than the defendant, in this action. We reject this argument for two reasons. First, we are not convinced, either by Lakeside's cited authorities or by those that we have found, that Wisconsin law bars a plaintiff from asserting laches as a general matter. Second and more importantly, this is a declaratory judgment action. In such actions, the usual positions of the parties are sometimes reversed, and this is the case here. Zizzo, though procedurally a plaintiff, is still seeking to establish laches as an affirmative *defense* against any potential foreclosure by Lakeside—a shield and not a sword. We see no reason why he should not be able to establish this defense by declaratory judgment, particularly where Lakeside has refused for sixteen years to test its claims by bringing its own action. We further reject Lakeside's argument that the court's application of laches was a declaration of "hypothetical or future rights," and uphold the circuit court's conclusion that all of the elements of laches are present in this case. We therefore affirm.

¶ 3. This litigation began in September 2005, when Zizzo brought a declaratory judgment action

requesting the court to discharge notes and mortgages that his parents had made to six named defendants. The first note and mortgage were to U.S. Bank; Zizzo alleged that this note had been paid off. U.S. Bank never answered the complaint or appeared in the case, and so the court granted default judgment to Zizzo. The second mortgage secured five notes that Zizzo's parents had given to the five other defendants in the action; Lakeside Steel among them. Each note's repayment terms involved the lender receiving a share of the proceeds of "a certain metal shredding machine" located on the mortgaged property. No payments were ever made on the five notes, though the date of the last scheduled payment was more than twelve years earlier. No claim or action had been brought on the notes or mortgage except for the claim of defendant Bane Nelson in Zizzo's father's probate proceeding, which claim had been withdrawn. Zizzo argued that any claims on the notes were barred by the statute of limitations or by laches or estoppel and that the mortgages securing them should therefore be discharged.

¶ 4. Zizzo eventually moved for summary judgment. The circuit court initially rejected each of Zizzo's arguments. It noted that the notes were subject to a six-year statute of limitations and thus no longer enforceable. *See* WIS. STAT. § 893.43 (2005–06).[2] However, it held that the mortgage securing them was separately enforceable for up to thirty years under WIS. STAT. § 893.33, and thus defendants were entitled to foreclosure even though they could not collect on the underlying notes. The court further held the prejudice ele-

---

[2] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

ment of laches to be missing and thus denied Zizzo relief on this ground as well.

¶ 5. In April 2007, however, on Zizzo's motion for reconsideration, the circuit court reversed itself on the issue of laches and held that it would bar the defendants from enforcing the mortgage. The circuit court noted that each of the elements of the doctrine was present: unreasonable delay, because no action had been brought on the mortgage in the eighteen years that the notes had gone unpaid; lack of knowledge on Zizzo's part that the mortgagees would assert rights under the mortgages, because they had not done so during this time, even once Zizzo brought his own action; and prejudice, because the original mortgagors and note-signers were dead and thus Zizzo had no way of getting any favorable evidence about the notes' and mortgage's execution and validity. *See State ex rel. Coleman v. McCaughtry*, 2006 WI 49, ¶¶ 27–29, 290 Wis. 2d 352, 714 N.W.2d 900, *opinion clarified*, 2006 WI 121, 297 Wis. 2d 587, 723 N.W.2d 424. Of the original defendants, only Lakeside appealed; Zizzo cross-appealed the circuit court's holding that the six-year statute of limitations did not bar action on the mortgage.

██

¶ 6. Our standard of review is de novo for two reasons. First, we are reviewing a summary judgment. *See Commercial Union Midwest Ins. Co. v. Vorbeck*, 2004 WI App 11, ¶ 7, 269 Wis. 2d 204, 674 N.W.2d 665. Second, the issues presented are questions of law. Though the grant or denial of declaratory relief is addressed to the trial court's discretion, where the exercise of such discretion turns on a question of law, we review the question of law de novo. *Id.* Further, whether the elements of laches are met in this case

presents a question of law. *See Sawyer v. Midelfort*, 227 Wis. 2d 124, 159, 595 N.W.2d 423 (1999).[3]

¶ 7. There is no dispute that Lakeside's mortgage meets all of the formal requirements for validity found in WIS. STAT. § 706.02. Rather, Zizzo claims, and the trial court agreed, that Lakeside has lost its right to enforce the mortgage by operation of laches. Laches is an equitable doctrine whereby a party that delays making a claim may lose its right to assert that claim. Laches is distinct from a statute of limitations and may be found where the statute of limitations has not yet run. *See Schafer v. Wegner*, 78 Wis. 2d 127, 132, 254 N.W.2d 193 (1977). It may be asserted against actions founded in both equity and law. *Andersen v. Kojo*, 110 Wis. 2d 22, 26, 327 N.W.2d 195 (1982). The three elements of laches, as noted above, are (1) unreasonable delay by the party

---

[3] It may be the case that a circuit court, finding all the elements of laches present, may nevertheless exercise its discretion not to apply the doctrine. *See State ex rel. Coleman v. McCaughtry*, 2006 WI 49, ¶ 17, 290 Wis. 2d 352, 714 N.W.2d 900. Further, this court has stated that our review of the grant or denial of equitable relief, such as laches, is for erroneous exercise of discretion. *Singer v. Jones*, 173 Wis. 2d 191, 194–95, 496 N.W.2d 156 (Ct. App. 1992). However, the supreme court has applied the doctrine of laches on review of a summary judgment after finding all the elements present as a matter of law. *Schafer v. Wegner*, 78 Wis. 2d 127, 132, 254 N.W.2d 193 (1977). The supreme court has also analyzed and applied equitable estoppel, a doctrine related to laches, as a question of law subject to de novo review. *Milas v. Labor Ass'n of Wisconsin, Inc.*, 214 Wis. 2d 1, 5, 8, 571 N.W.2d 656 (1997). Because Lakeside challenges the circuit court's decision only on the legal requisites and limitations of laches, and does not allege an improper exercise of discretion, we need not further address whether a mixed standard of review might be appropriate in some cases.

seeking relief, (2) lack of knowledge or acquiescence by the party asserting laches that a claim for relief was forthcoming, and (3) prejudice to the party asserting laches caused by the delay. *See State ex rel. Coleman*, 290 Wis. 2d 352, ¶¶ 27–29.

¶ 8. However, before addressing the elements of laches as applied to this case, we must first address whether Zizzo, being a plaintiff and not a defendant, may assert the doctrine at all. Lakeside argues that he may not, relying chiefly on Wis. Stat. § 802.02(3). That subsection provides that "[i]n pleading to a preceding pleading, a party shall set forth affirmatively any matter constituting an avoidance or affirmative defense including but not limited to the following: . . . ." It then lists twenty-four defenses that must be so pled, including laches. Lakeside's argument is that since laches is listed as an affirmative defense, it can only be used by a defendant; since Lakeside has never begun any action or filed any pleading seeking to enforce the mortgage, Zizzo could not have pled laches in a "pleading to a preceding pleading."

¶ 9. We find this logic unconvincing. First, the statute is contained in a section titled "General rules of pleading." It is also limited by its own terms: it only applies "[i]n pleading to a preceding pleading." Its point is to require a defendant, counterclaim defendant, third-party defendant, etc., to identify any affirmative defenses in his or her answer, reply to a counterclaim, third party answer, etc. (or by motion, *see* Wis. Stat. § 802.06(2)(a)) – or the defenses are deemed waived. *See County of Milwaukee v. State*, 113 Wis. 2d 199, 206, 335 N.W.2d 412 (Ct. App. 1983). The statute is not about what claims or defenses are available to what parties, and it does not say that the listed claims may *only* be pled by defendants—if it did, no plaintiff could ever allege

"fraud," since that is listed in the statute alongside "laches." WIS. STAT. § 802.02(3).

¶ 10. Lakeside's only other authority on this point is *Sawyer*, in which the supreme court described laches as an "equitable defense to an action" and referred repeatedly to the doctrine being invoked by the defendant and against the plaintiff. *Sawyer*, 227 Wis. 2d at 159. But that was what was happening in *Sawyer*: a defendant was claiming laches against a plaintiff. *See id.* at 130. The court was describing the doctrine as it applied to the case before it. There is no hint in the *Sawyer* opinion of the court considering, much less deciding, the question of whether a plaintiff may invoke laches.

¶ 11. And there are other cases, unmentioned by Lakeside, that suggest that a plaintiff may assert the doctrine. For example, in *Mansfield v. Smith*, 88 Wis. 2d 575, 593, 277 N.W.2d 740 (1979), the plaintiff contended that the defendant had, by laches, waived his right to a contractual option and therefore could not rely on the option as an affirmative defense. The court rejected the laches argument, but on the merits, and did not suggest that a plaintiff could never claim laches. *Id.* at 594. *See also Bade v. Badger Mut. Ins. Co.*, 31 Wis. 2d 38, 46, 50, 142 N.W.2d 218 (1966); *Saxauer v. Luebke*, 33 Wis. 2d 56, 60, 146 N.W.2d 385 (1966) ("If laches is to be established as a ground for denying defendant the right to insist on arbitration, it will have to be grounded on additional proof adduced by plaintiff."). In fact, the only Wisconsin case we have found which actually considered whether a plaintiff may invoke laches explicitly left the question open. *See Frey v. Geuder, Paeschke & Frey Co.*, 4 Wis. 2d 257, 276, 90 N.W.2d 765 (1958) ("Defendants argue that the doctrine of laches is available only as a bar to affirmative relief, and that since it is the plaintiffs who

are seeking affirmative relief from the court, they cannot invoke laches to bar rights asserted by defendants merely by way of defense. We need not go that far, however." (Citation omitted.)).[4]

¶ 12. But in any case the question presented here is different, and narrower, than the general question of whether a plaintiff may ever invoke laches. In our view, the fact that this is a declaratory judgment action is a crucial point. "[I]n many actions for declaratory judgment, the realistic position of the parties is reversed. The plaintiff is seeking to establish a defense against a cause of action which the declaratory defendant may assert . . . ." *Public Service Commission v. Wycoff Co.*, 344 U.S. 237, 248 (1952) (footnote omitted). Zizzo, though he is procedurally the plaintiff, is in reality seeking to establish rights he would hold as a defendant in a potential foreclosure claim by Lakeside. Lakeside repeatedly points out that it has not, in fact, brought such a foreclosure claim, but a distinguishing feature of the declaratory judgment is that it allows courts to "declare rights, status, and other legal relations" of parties "whether or not further relief is or could be claimed." Wis. Stat. § 806.04(1).

¶ 13. Lakeside's brief does not seriously address whether a potential defendant may establish an affirmative defense such as laches by declaratory judgment, but our own research has turned up a line of federal cases addressing the question. One case, *Hanes Corporation v. Millard*, 531 F.2d 585, 592–93 (D.C. Cir. 1976), *abrogated on other grounds, Nat'l R.R. Passenger Corp. v. Consolidated Rail Corp.*, 892 F.2d 1066, 1072 (D.C. Cir. 1990), is frequently cited for the proposition that

---

[4] *See also* 27A Am. Jur. 2d *Equity* § 120 (2008) ("Laches may apply against either party to an action.").

"[t]he anticipation of defenses is not ordinarily a proper use of the declaratory judgment procedure." However, this case and others are concerned primarily with the "disorderly race to the courthouse" that results if a potential defendant can, by use of declaratory judgment procedure, usurp the plaintiff's traditional right to choice of forum and timing. *See id.* at 593. For example, a business fearing suit might file a declaratory judgment action in a forum with a favorable statute of limitations, thereby cutting off liability. *See BASF Corp. v. Symington,* 50 F.3d 555, 556 (8th Cir. 1995). Where forum-shopping is not at issue, however, there is no blanket prohibition on raising affirmative defenses by declaratory action, and in fact "courts regularly consider the merits of affirmative defenses raised by declaratory plaintiffs." *Id.* at 558.

¶ 14. Here, there is no hint of any forum-shopping concern: the land at issue is in Wisconsin, both parties are Wisconsin residents, and there is no indication in the transaction documents that any law other than Wisconsin's should govern. By filing his action Zizzo did effectively select the timing of litigation over the mortgage; but he did so sixteen years after Lakeside could have sought foreclosure. The fact that the circuit court found Lakeside guilty of laches greatly diminishes our concern for its right to choose the time of suit. And why, if Zizzo has a legitimate defense to a foreclosure action, should he be prevented from raising it by Lakeside's refusal to bring its claim and let the court test its merits? Lakeside has not suggested any answer, either to this question or to the question of why it has delayed for so long.

¶ 15. The very purpose of a declaratory judgment is "to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." Wis.

S<span>TAT</span>. § 806.04(12). One of the policy justifications for the liberal granting of declaratory relief is that those who claim dubious legal rights should not be able to use them to bully others while simultaneously resisting a judicial determination of the validity of those rights. *See Hanes Corp.*, 531 F.2d at 592. A party holding a mortgage whose enforceability is in some doubt may find it advantageous to stay out of court but nevertheless hold the mortgage over the head of the mortgagor in order to extract money that may or may not be owed. In accord with the legislative policy of relief from such uncertainty, we conclude that Zizzo is entitled to assert laches as a declaratory judgment plaintiff.

¶ 16. However, Lakeside argues that the circuit court in this case improperly used a declaratory judgment to determine "hypothetical or future rights."[5] *See Village of Slinger v. City of Hartford*, 2002 WI App 187, ¶ 10, 256 Wis. 2d 859, 650 N.W.2d 81. It restates the same basic argument on this point three times, once for each element of laches, but we will discuss only one instance. With respect to the first element, unreasonable delay in bringing an action, Lakeside posits:

---

[5] Lakeside also argues that the court's grant of summary judgment in this case constituted a determination of a hypothetical question based upon assumed facts. *See Spoehr v. Mittelstadt*, 34 Wis. 2d 653, 664, 150 N.W.2d 502 (1967). *Spoehr* has not been cited on this subject in many years, and it seems to stand for the proposition that courts should generally not grant summary judgment even if, assuming that all the facts are as the party opposing judgment claims, as a matter of law the party still would not be entitled to prevail. In fact, this is exactly what courts routinely do on summary judgment. *See, e.g., Hatheway v. Gannett Satellite Information Network, Inc.*, 157 Wis. 2d 395, 398, 459 N.W.2d 873 (Ct. App. 1990).

[T]here is no claim by Lakeside Steel in which the defense that Lakeside Steel unreasonably delayed in bringing its claim can be considered. Absent such a claim, the trial court is speculating without any evidence about hypothetical issues and hypothetical future rights that may or may not exist in some future action.

¶ 17.　Frankly, the argument that Lakeside cannot be unreasonably late in bringing its action *because it has not yet brought its action* gives us a headache. To be sure, one cannot yet determine just exactly how long Lakeside might delay, if given the chance—it might have waited another one, ten, or one hundred years to file, had Zizzo not brought his own action. What we do know is that Lakeside waited at least sixteen years (eighteen, counting the two years between Zizzo filing suit and the judgment, during which time Lakeside *still* did not assert a foreclosure claim). And we also know that in *this* suit, in which laches was claimed and therefore Lakeside's delay, and its reasonableness, were at issue, Lakeside put forth not a single shred of an explanation for it. The circuit court did not need a crystal ball to determine that Lakeside's delay would be unreasonable in a "hypothetical future action" because the delay is already unreasonable—and Lakeside's claim is not going to get any younger.

¶ 18.　We will not rehash in detail Lakeside's similar arguments with respect to the second and third elements of laches. Both consist of Lakeside accusing the circuit court of speculating about future conditions, and both are refuted by the fact that the conditions are already satisfied and what has already happened is not going to change. Lakeside fails to make any argument about the oft-recited features of a justiciable controversy necessary for declaratory relief, but we will point

out briefly that each is present here. Zizzo is asserting a claim of right (laches) against one with an interest in contesting it (Lakeside). Their interests, obviously, are adverse. Zizzo has a legally protectible interest, both in that he owns the mortgaged land and in that he has the right to assert laches against Lakeside for its tardiness. The controversy is ripe for judicial determination because each of the elements of laches is already met, and not dependent on future events that may or may not occur. *See Village of Slinger*, 256 Wis. 2d 859, ¶ 9.

¶ 19. Lakeside makes one more argument against laches in this case, this one specific to the third element, prejudice to Zizzo resulting from its delay. *See State ex rel. Coleman*, 290 Wis. 2d 352, ¶ 27. Zizzo notes that his parents, who were the signers of the note and mortgage, are now dead, and that he himself was not involved in any of the discussions leading to the signing of the documents. He therefore argues that he is prejudiced by Lakeside's delay because it has prevented him from being able to present any kind of defense related to the validity of the mortgage or the circumstances surrounding its execution. This is an example of what is known as "defense prejudice." *See* 27A AM. JUR. 2D *Equity* § 144 (2008) (defense prejudice is "the impairment of the ability to meet a defense due to circumstances such as . . . witness unavailability").

¶ 20. Lakeside responds that Zizzo's affidavit on this point is "legally insufficient" because it is not founded on personal knowledge and states only conclusions of law. We are a little unsure what Lakeside means by this. Zizzo's parents made the deal leading to the notes and mortgage, Zizzo was not involved, and the parents are now dead. All of these are facts within Zizzo's personal knowledge (and are uncontroverted). These facts lead inexorably to one conclusion: that

Zizzo cannot get any information from his parents about the circumstances that allowed them to never make a single payment on the notes and yet, for some reason, never get sued for sixteen years. If Lakeside means to say that Zizzo's prejudice claim is speculative because he does not know exactly what information his parents possessed, then Lakeside misunderstands defense prejudice. *Of course* he does not know that information—and that is exactly how he is prejudiced.[6]

██

¶ 21. Witness unavailability caused by delay may not always be enough to satisfy the prejudice element of laches, as, for example, where the witness's potential testimony is of marginal importance. *See* 27A AM. JUR. 2D *Equity* § 152 (2008). Here, however, the parties on Zizzo's side of the disputed transaction are dead. No one else could provide Zizzo with the information that would allow him to assert any defenses to the mortgage. Zizzo's parents' potential testimony was thus crucial to Zizzo's defense, and by its loss, he is prejudiced. *See id.*

---

[6] The only clue in the summary judgment record is this: at a proceeding in the estate of Zizzo's father, Zizzo's attorney made an offer of proof to the effect that Zizzo's parents had told him that the notes and mortgage were invalid because "they were unsupported by compensable service rendered by the claimant, that there were overcharges by the claimant, that the workmanship was bad by the claimant, and that these facts were not discovered by [Zizzo's parents] until after the time the note was signed." It may be that these statements are related to the "metal shredding machine" referred to in the loan notes. Because of the death of Zizzo's parents (and Lakeside's failure to provide any information) we will likely never know what went wrong and what the arrangements might have been between the parents and their creditors.

¶ 22. Because we affirm the trial court on the issue of laches, we need not address the issues raised in Zizzo's cross-appeal. No costs to either party.

*By the Court.*—Judgment affirmed.