# COURT OF APPEALS
## DECISION
## DATED AND FILED

## September 4, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP607**

Cir. Ct. No. **2015CV22**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

LOLIE'S WEST BAY CONDOMINIUM ASSOCIATION,

   PLAINTIFF-RESPONDENT,

 V.

WENDY J. WAITZMAN AND JOSEPH W. WAITZMAN, TRUSTEES OF THE
WENDY J. WAITZMAN LIVING TRUST DATED APRIL 25, 2005,

   DEFENDANTS-APPELLANTS.

---

APPEAL from a judgment of the circuit court for Vilas County: NEAL A. NIELSEN III, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Wendy Waitzman and Joseph Waitzman, trustees of the Wendy J. Waitzman Living Trust (the Waitzmans) appeal from a judgment finding that the Waitzmans violated the Declaration of Condominium Ownership (the Declaration) by failing to obtain approval from Lolie's West Bay Condominium Association (the Association) prior to remodeling their unit to a two-story building. The Waitzmans also challenge an award of attorney fees. We affirm.

## BACKGROUND

¶2 The Declaration governing the Waitzmans' condominium unit requires owners to obtain approval from the Association before making structural additions or alterations to their units. In the event it becomes necessary for the Association to commence a court action to bring about compliance with the Declaration, the violating unit owner also agrees to reimburse the Association for reasonable attorney fees incurred in bringing such an action upon a finding by the court that the violation was willful and deliberate.

¶3 Following the purchase of their unit, the Waitzmans attended the Association's 2012 annual fall meeting and announced plans to expand and remodel their unit to include construction of a "sleeping loft." An email from the Waitzmans to the other unit owners confirmed the plan to add a loft. Based upon a letter, a sketch, and the Waitzmans' representations made at the annual meeting, the Association voted to approve a remodel of the Waitzmans' unit as a one-story structure with a sleeping loft. The Waitzmans submitted no final blueprints or drawings showing an elevation of the proposed structure. The Waitzmans subsequently submitted an application to the Vilas County Zoning Department for

2

a building permit for an addition, which also showed a one-story building with a sleeping loft. The zoning department never approved this application.

¶4 The Waitzmans thereafter revised their plans to create a full second-story addition. The Waitzmans submitted to the Vilas County Zoning Department a second zoning application containing different plans and drawings. No blueprints or elevations were submitted at that time. The zoning department ultimately issued a permit, but at no time did the Waitzmans advise the Association of their plan to build a full second-story addition instead of merely a sleeping loft.

¶5 The Association first became aware that the Waitzmans were building a two-story addition when another unit member noticed, toward the end of January 2013, that second-floor framing had begun. That unit member forwarded a photograph to the Association's president who was in Florida at the time. The president then telephoned Wendy Waitzman to advise that it appeared to the Association that the Waitzmans were building a two-story structure which had not been approved. Wendy acknowledged to the Association's president that the Waitzmans did not approach the Association for approval of their revised plan because they knew it would not be approved.

¶6 The Association's president confirmed his conversation with Wendy Waitzman by email on the following day, in which he reiterated that there was never an indication of a second floor in the Waitzmans' original application or statements to the Association. Within two weeks of the president's conversation, Wendy Waitzman's brother, also an Association member, received a call from Joseph Waitzman asking if anything could be done, and asking Wendy's brother to talk to the Association on the Waitzmans' behalf. Wendy's brother told Joseph,

"You are outside the rules and what was approved. You should stop now, and reconsider and redevelop your plans." However, the Waitzmans proceeded to complete their two-story addition in May 2013.

¶7 The Association filed a complaint on February 9, 2015, and an amended complaint was filed thereafter on December 8, 2015, seeking injunctive relief. The circuit court granted partial summary judgment, finding the Waitzmans "violated the Condominium Declarations by failing to obtain the approval from the Association for the construction of [the] two[-]story Unit that [the Waitzmans] ultimately constructed …." After a two-day trial to the court concerning the appropriate remedy, the court entered extensive "Findings of Fact, Conclusions of Law and Judgment."[1] Among other things, the court determined: "The home, as constructed, is a material breach of the representations made to the Association when the Waitzmans sought approval to alter their unit." The court further concluded, "[T]he Waitzmans' breach of an oral representation to the Board of Directors and the unit owners, when used to secure approval for construction is actionable in equity." The court also found the Waitzmans' "decision to build in a manner contrary to their original request was willful, and deliberate, and with knowledge that they were exceeding the permission they had sought from the Association."

¶8 The circuit court recognized that "the cost of remedying this situation is great, but the violation is neither accidental, nor de minimis." The court therefore ordered the Waitzmans to "remove the second story of their

---

[1] The circuit court expressly incorporated and adopted into the conclusions of law its ruling on partial summary judgment.

structure, and restore the roof line to a loft." The court further found the Association was entitled to reasonable attorney fees incurred in bringing the action, and that "[i]t would be inequitable to require individual unit owners to bear personal expense vindicating the rights of the Association …." The Waitzmans now appeal.

## DISCUSSION

### I. Grant of Partial Summary Judgment

¶9 We use the same summary judgment methodology as the circuit court. *See Preloznik v. City of Madison*, 113 Wis. 2d 112, 115-16, 334 N.W.2d 580 (Ct. App. 1983). We affirm a grant of summary judgment if the record demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2017-18).[2] In so doing, we may benefit from the reasoning and analysis of the circuit court. *See AccuWeb, Inc. v. Foley & Lardner*, 2008 WI 24, ¶16, 308 Wis. 2d 258, 746 N.W.2d 447.

¶10 The Waitzmans argue that public policy favors the free and unrestricted use of property, and that the Declaration must therefore be strictly construed to favor the unencumbered use of their structure. The Waitzmans further contend that although "the Declaration provides that no unit may be altered without the prior written consent of the Association, [the Declaration] contains no standards of approval." The Waitzmans claim they relied upon the county zoning

---

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

authority approval, that their remodel was not substantially different from other units that vary in size, appearance and elevation, and that there is no reason their new unit should not have been approved by the Association. They argue their second-story unit is not inconsistent with the look of the rest of the area or the "fish camp look" they indicated they would maintain. Accordingly, the Waitzmans contend the Association's disapproval of their remodel was arbitrary and unreasonable, and the circuit court erred by granting the Association partial summary judgment.

¶11    There are multiple problems with the Waitzmans' arguments. First, they fail to appreciate the summary judgment standard of review. Here, there are no material questions of fact. The Waitzmans acknowledge they were bound by the Declaration. The Waitzmans breached the Declaration by altering their unit to a two-story structure without the prior consent of the Association. The Association did not refuse to approve the plans or unduly restrict the use of the Waitzmans' property. Indeed, the Association had no opportunity to do so, as the Waitzmans never submitted plans for the second-story remodel to the Association for its prior approval. This fact alone was sufficient for the circuit court to grant partial summary judgment on the grounds that the Waitzmans violated the Declaration by failing to obtain prior approval from the Association for the construction of a two-story unit.

¶12    We also agree with the circuit court's finding that "there is a material variance between the plans to add a sleeping loft, and the plans to add a second floor. … there are very obvious differences." Contrary to the Waitzmans' perception, the footprint and height are not the only matters to have been considered by the Association. The Association was told the unit would be one story with a loft, not a full second-story addition. The Waitzmans' argument that

they relied upon the zoning authority approval is irrelevant as to whether they violated the terms of the Declaration in the first instance. The Waitzmans contend the Association did not request specific plans, or request that it be provided with further plans after zoning approval. However, it was the Waitzmans' burden under the Declaration to obtain the Association's approval before making, or causing to be made, any structural addition or alteration. They did not obtain the Association's prior approval for the two-story remodel. As the court correctly determined, "the construction completed by the Waitzmans exceeded the scope of approval that was granted by the Association." The court properly granted partial summary judgment on that issue.

¶13 The Waitzmans also argue the doctrine of laches applied to bar the Association from obtaining injunctive relief. Laches has three elements: (1) unreasonable delay by the party seeking relief; (2) lack of knowledge or acquiescence by the party asserting laches that a claim for relief was forthcoming; and (3) prejudice to the party asserting laches caused by the delay. *See Zizzo v. Lakeside Steel & Mfg. Co.*, 2008 WI App 69, ¶7, 312 Wis. 2d 463, 752 N.W.2d 889. If any single element is missing, laches will not be applied. *Sawyer v. Midelfort*, 227 Wis. 2d 124, 159, 595 N.W.2d 423 (1999). Even if a circuit court finds all the elements of laches present, it may nevertheless exercise its discretion not to apply the doctrine. *See State ex rel. Coleman v. McCaughtry*, 2006 WI 49, ¶17, 290 Wis. 2d 352, 714 N.W.2d 900. In addition, laches is an equitable doctrine, and a party seeking to invoke equity must have clean hands. *See Wisconsin Patients Comp. Fund v. St. Mary's Hosp.*, 209 Wis. 2d 17, 37, 561 N.W.2d 797 (Ct. App. 1997).

¶14     The circuit court specifically found that the Waitzmans did not have clean hands, and that the equitable doctrine of laches was unavailable. The court stated:

> The Association is not prohibited from seeking injunctive relief in this matter based on a theory of laches, or estoppel. The Waitzmans knew that they did not have permission to build a two[-]story home, and did not seek new approval when they changed their plans, because they knew the Association would not approve.

¶15     The record amply supports the circuit court's findings. Wendy Waitzman acknowledged to the Association's president that they did not approach the Association for a revised approval, because they knew it would not be approved. The Association's delay in commencing suit was not unreasonable. Rather, the Association objected to the second-story addition as soon as it learned of it. It is also clear the Waitzmans were repeatedly told of the objections and to stop the remodel while still in its early stages. Instead, as the court stated, the Waitzmans "forged ahead to completion." Furthermore, we agree with the court's findings that the Waitzmans were not prejudiced by any delay. As the court reasoned:

> It is not practical to assume that immediate action to enjoin continued construction could be initiated by the Association under the facts of this case. All but one of the unit owners, were, quote "snowbirds", unquote, residing at various locations around the country at the time the violation was brought to the attention of the President. It is not laches. Neither is the considerable period of time which elapsed between the construction and the initiation of this lawsuit. The Waitzmans were not prejudiced thereby, for most of this period their project was long completed. It is understandable and expected that the decision to proceed with this litigation involved many considerations, including, but certainly not limited, to cost. And required time on the part of the individual unit owners, and the Board of Directors to think through.

8

We conclude the court properly exercised its discretion in determining that laches did not operate to bar the Association's action against the Waitzmans.

## II. Remedies

¶16 Following the entry of partial summary judgment in favor of the Association, the remaining issue was the form and scope of the remedy. The circuit court enjoys broad discretion when crafting injunctive relief. *See Hoffmann v. Wisconsin Elec. Power Co.*, 2003 WI 64, ¶23, 262 Wis. 2d 264, 664 N.W.2d 55. Injunctive relief should be tailored to the necessities of the particular case. *Id.* We will affirm if the court examined the relevant facts, applied the proper law, and reached a reasoned conclusion that a reasonable court could reach. *Kocken v. Wisconsin Council 40*, 2007 WI 72, ¶25, 301 Wis. 2d 266, 732 N.W.2d 828. We will not overturn a discretionary decision merely because we would have decided the matter differently. *State v. Eichman*, 155 Wis. 2d 552, 567-68, 456 N.W.2d 143 (1990).

¶17 In this case, the Declaration provided that in the event a unit owner makes a structural addition or alteration without the required prior consent, the Association shall have the right to proceed in a court of equity for an injunction to seek compliance with the provisions. The Declaration further granted the Association authority to levy an assessment against the unit owner for sums necessary to remove any unauthorized structural addition or alteration and restore the property. In addition, the Declaration provided that the remedies for violations provided for in WIS. STAT. § 703.24 shall be in full force and effect. Section 703.24(2) provides in part:

> **Remedies for violations by unit owner or tenant of a unit owner.**

9

(2) LIABILITY FOR UNIT OWNER VIOLATION. A unit owner who commits a violation is liable for any charges, fines, or assessments imposed by the association pursuant to the bylaws or association rules as a result of the violation and may be subject to a temporary or permanent injunction.

¶18 In crafting its remedy, the circuit court took into account the various factors at issue and balanced the hardships to both parties—specifically stating that it "recognizes that the cost of remedying this situation is great, but the violation is neither accidental, nor de minimis." The court also cited how it "was struck, frankly, by the sincerity of the unit owners who testified how this structure and the Waitzmans' conduct has affected their relationships, their peace of mind and their historic relationship to [The Association] in a profound way." The court also took into consideration the limitations on property rights in a condominium situation. The court stated:

[I]f the Association is precluded from holding unit owners to account for failing to build additions as promised, there would be little reason for a condominium's existence. Property rights in the condominium must take some back seat to the majority will of the Association of unit owners in order to provide the type of harmonious living situation that everyone agreed to by purchasing, subject to a Declaration and Bylaws.

¶19 Based upon its analysis of the relevant factors, the circuit court ruled "that the Waitzmans be ordered to remove the second story of their structure, and restore the roof line to a loft." The fact that the Waitzmans may disagree with the court's determination—or that another court may have come to a different conclusion—is not a basis to overturn it. The court properly exercised its discretion in crafting the remedy in this case.

¶20 Finally, the Waitzmans argue the circuit court erred by granting the Association its attorney fees, which they contend the Association neither paid nor

became legally liable for paying. However, the Declaration provided that should the Association find it necessary to bring a court action to bring about compliance with the Declaration, the violating unit owner "shall reimburse the Association for reasonable attorney's fees incurred by it, in bringing such action," upon a finding by the court that the violation was willful and deliberate.

¶21 Here, the court's finding that the Waitzmans' violation of the Declaration was willful and deliberate is not clearly erroneous. *See* WIS. STAT. § 805.17(2). As mentioned, Wendy Waitzman acknowledged to the Association's president that they did not approach the Association for a revised approval, because they knew it would not be approved. The Waitzmans were repeatedly told of the objections and to stop the remodel while still in its early stages. Instead, the Waitzmans "forged ahead to completion." Additionally, the court correctly concluded the Association was the plaintiff in this action and thus incurred the legal fees. No party in this case has subrogation rights. The fact that voluntary payments may have been made from unit members to the Association for its attorney fees does not limit the Association's right to reimbursement of the attorney fees it incurred in this action. Moreover, the Waitzmans raise no issue concerning the reasonableness of the fees. In all, the court properly found the Association was entitled to reimbursement of attorney fees incurred in bringing the action.

> *By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.