REBECCA GRASSL BRADLEY, J.
*483 *56 ¶1 We review the court of appeals' decision to summarily deny as untimely Ezequiel Lopez-Quintero's petition for habeas corpus seeking reinstatement of his right to file a direct appeal. Lopez-Quintero contends his petition satisfied all of the requirements under Wis. Stat. § (Rule) 809.51 (2015-16),[1] and the court of appeals erred when it presumed, without ordering a response from the State, that his nine-year delay in filing his petition caused prejudice. We hold that neither the language of Rule 809.51 nor principles of equity require a habeas petitioner to allege timeliness in the petition. We overrule State ex rel. Smalley v. Morgan, 211 Wis. 2d 795, 565 N.W.2d 805 (Ct. App. 1997) (per curiam) abrogated in part by State ex rel. Coleman v. McCaughtry, 2006 WI 49, 290 Wis. 2d 352, 714 N.W.2d 900, which imposed a "prompt and speedy" pleading requirement on habeas petitioners.[2] We reverse the decision of the court of appeals and remand for further proceedings.
*57 I. BACKGROUND
¶2 Christopher B. Cohen, an Illinois attorney who was also a member of the Wisconsin bar, and Frederick F. Cohn, an Illinois attorney who appeared pro hac vice, represented Lopez-Quintero. On March 7, 2008, a jury found Lopez-Quintero guilty of first-degree intentional homicide and carrying a concealed weapon.
¶3 On April 7, 2008, his attorneys filed a motion for a new trial. Two days later, the circuit court sentenced Lopez-Quintero to life in prison plus five years, without any possibility of extended supervision. During the sentencing hearing, one of Lopez-Quintero's attorneys discussed a possible appeal with the circuit court.
[DEFENSE COUNSEL]: Number one, we have filed a motion for a new trial already.
THE COURT: Yes, sir.
[DEFENSE COUNSEL]: Would that relieve us of filing the notice of intent to proceed to appeal?
THE COURT: No. I still think you have to file that.
[DEFENSE COUNSEL]: Within 20 days?
THE COURT: Right.
¶4 The circuit court gave Lopez-Quintero's attorneys the "Notice of Right to Seek Postconviction Relief" form, which the attorneys reviewed with Lopez-Quintero, *484 who checked the box indicating "I plan to *58 seek postconviction relief." One of Lopez-Quintero's attorneys also signed the form and certified as follows:
I have counseled the defendant about the decision to seek postconviction relief. I have informed the defendant that this decision must be made and communicated to me within 20 days of sentencing. I believe the defendant understands the right to postconviction relief and the 20 day time limit. I understand that it is my duty to file the Notice of Intent to Pursue Postconviction Relief on behalf of the defendant if that intent is timely communicated to me.
(Emphasis added.) At the conclusion of the sentencing hearing, one of Lopez-Quintero's attorneys advised he would "get that other document filed within 20 days."
¶5 During the June 10, 2008 hearing on Lopez-Quintero's motion for a new trial, his attorneys discussed Lopez-Quintero's indigence and the possibility of the circuit court appointing them as appellate counsel. The circuit court responded it would "endorse [the] appointment" but expressed it did not "have the ability to appoint you for the appeal." Despite the expiration of the 20-day deadline to file the notice of intent, Lopez-Quintero's attorneys did not request an extension to file one. On the same day, the circuit court granted Lopez-Quintero's "Petition for Waiver of Filing and Service Fees-Affidavit of Indigency and Order" and allowed Lopez-Quintero to "get transcript of trial without payment."
¶6 Lopez-Quintero's actions manifested his intent to pursue postconviction relief. However, no notice of intent was ever filed, and neither of Lopez-Quintero's attorneys requested an extension of time to file the notice of intent. Consequently, an appeal never occurred.
*59 ¶7 On February 1, 2018-nearly ten years after his conviction-Lopez-Quintero petitioned the court of appeals for a writ of habeas corpus under Wis. Stat. § (Rule) 809.51; see also State v. Knight, 168 Wis. 2d 509, 484 N.W.2d 540 (1992).[3] Lopez-Quintero, now represented by the Frank J. Remington Center at the University of Wisconsin Law School, alleged that his trial attorneys rendered ineffective assistance by failing to file a notice of intent within the 20-day deadline, and this deficiency caused his direct appeal rights to expire. Lopez-Quintero asked the court of appeals to "reinstate his appellate deadlines, so that he may pursue a direct appeal of his conviction and sentence." The petition alleged that Lopez-Quintero relied on his attorneys to pursue the appeal after he unequivocally indicated his intent to pursue postconviction relief by signing the Notice of Right to Seek Postconviction Relief form and checking the box indicating he intended to seek postconviction relief, but the petition omitted any reason for Lopez-Quintero's failure to file his claim for habeas relief until almost a decade after his appeal rights lapsed.
¶8 The court of appeals denied Lopez-Quintero's petition ex parte under Wis. Stat. § (Rule) 809.51(2). State ex rel. Lopez-Quintero v. Dittmann, No. 2018AP203-W, unpublished order at 1 (Wis. Ct. App. Feb. 12, 2018). It opined that "[t]he problem with *60 Lopez-Quintero's petition is that it comes too late." Id. at 2. Citing Smalley, *485 the court of appeals concluded that "[a]lthough Lopez-Quintero's stated limitations[4] can account for some delay in this case, it [sic] cannot account for over nine years of delay. Accordingly, we are not persuaded that he sought habeas relief in a timely fashion and will deny the petition for that reason." Lopez-Quintero, No. 2018AP203-W, unpublished order at 2-3.
¶9 Lopez-Quintero filed a motion for reconsideration, asking the court of appeals "to reconsider its decision and refrain from denying Mr. Lopez-Quintero's legally-sufficient petition ex parte" or "[a]t the very least ... order the State to respond, and apply Coleman if the State raises the affirmative defense of laches." Under Coleman, "[t]he State has the burden of proof in regard to all the elements of its laches defense" therefore "the court of appeals erred when it assumed the State was prejudiced by Coleman's unreasonable delay." Coleman, 290 Wis. 2d 352, ¶¶ 2, 37, 714 N.W.2d 900. The court of appeals denied the motion, and Lopez-Quintero petitioned this court for review, which we granted.
II. ANALYSIS
¶10 While habeas relief may be denied under the well-established doctrine of laches if a petitioner unreasonably delays the filing of his petition, this case resolves whether the court of appeals may deny an *61 otherwise sufficiently pled habeas petition ex parte, without a hearing or a response from the State, solely because the court of appeals deems it to be untimely. We hold that the court of appeals may not deny a habeas petition ex parte on the ground the petitioner failed to demonstrate he sought relief in a prompt and speedy manner. We overrule Smalley. Any equitable concerns regarding substantial delays, such as the near ten-year delay in the current case, are properly raised not sua sponte by the court of appeals but instead by the State asserting the defense of laches and establishing prejudice resulting from the delay.[5]
A. Standard of Review
¶11 We review the legal issues arising out of a habeas petition independently. Coleman, 290 Wis. 2d 352, ¶ 17, 714 N.W.2d 900. This case requires us to interpret Wis. Stat. § (Rule) 809.51, which presents a question of law. See State v. Ziegler, 2012 WI 73, ¶ 37, 342 Wis. 2d 256, 816 N.W.2d 238.
B. General Legal Principles
¶12 "A petition for writ of habeas corpus commences a civil proceeding wherein the petitioner claims an illegal denial of his or her liberty."
*62 Coleman, 290 Wis. 2d 352, ¶ 18, 714 N.W.2d 900. Often referred to as the "Great Writ," habeas corpus "indisputably holds an honored position in our jurisprudence." Engle v. Isaac, 456 U.S. 107, 126, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Its roots spring from English common law, and "its availability *486 is guaranteed by the U.S. Constitution, the Wisconsin Constitution, and by state and federal statute." State ex rel. Marberry v. Macht, 2003 WI 79, ¶ 22, 262 Wis. 2d 720, 665 N.W.2d 155 (quoting State ex rel. Haas v. McReynolds, 2002 WI 43, ¶ 11, 252 Wis. 2d 133, 643 N.W.2d 771 ); see also State ex rel. L'Minggio v. Gamble, 2003 WI 82, ¶ 17, 263 Wis. 2d 55, 667 N.W.2d 1 ; Wis. Stat. § 782.01(1) ("Every person restrained of personal liberty may prosecute a writ of habeas corpus to obtain relief from such restraint subject to [ Wis. Stat. §§] 782.02 and 974.06.").
¶13 The Great Writ constitutes "a bulwark against convictions that violate 'fundamental fairness.' " Engle, 456 U.S. at 126, 102 S.Ct. 1558 (quoted source omitted). Founded on principles of equity, habeas corpus "test[s] the right of a person to his personal liberty." Marberry, 262 Wis. 2d 720, ¶ 22, 665 N.W.2d 155 (quoted source omitted; alteration in original). "The purpose of the writ is to protect and vindicate the petitioner's right to be free from illegal restraint." Id.; see also State ex rel. Zdanczewicz v. Snyder, 131 Wis. 2d 147, 151, 388 N.W.2d 612 (1986). "Its function is to provide a prompt and effective judicial remedy to those who are illegally restrained of their personal liberty." State ex rel. Wohlfahrt v. Bodette, 95 Wis. 2d 130, 133, 289 N.W.2d 366 (Ct. App. 1980).
¶14 However, "[t]he extraordinary relief provided by the writ of habeas corpus is available only in limited circumstances," and the writ "does not issue as a right." Marberry, 262 Wis. 2d 720, ¶¶ 23, 25, 665 N.W.2d 155 (quoted *63 source omitted). A party seeking habeas relief must be restrained of his liberty and "show that the restraint was imposed by a body without jurisdiction or that the restraint was imposed contrary to constitutional protections." Haas, 252 Wis. 2d 133, ¶ 12, 643 N.W.2d 771. Additionally, the party "must show that there was no other adequate remedy available in the law." Id.; see also Waley v. Johnston, 316 U.S. 101, 105, 62 S.Ct. 964, 86 L.Ed. 1302 (1942) (extending the use of the writ "to those exceptional cases where the conviction has been in disregard of the constitutional rights of the accused, and where the writ is the only effective means of preserving his rights.").
We have long and consistently held that the extraordinary writ of habeas corpus is not available to a petitioner when the petitioner has other adequate remedies available. For instance, habeas corpus is not available to challenge a bindover decision by a court commissioner because the decision is challengeable on a statutory motion to dismiss. Similarly, the writ is not available to challenge the sufficiency of probable cause to issue a criminal complaint, even when the challenge is brought between arrest and the preliminary hearing, because the challenge can be made using other remedies at trial. Habeas corpus proceedings are likewise not available to challenge an administrative order revoking probation, since a writ of certiorari is available, and is the proper remedy under such circumstances. In short, if the petitioner has an otherwise adequate remedy that he or she may exercise to obtain the same relief, the writ will not be issued.
Marberry, 262 Wis. 2d 720, ¶ 25, 665 N.W.2d 155 (quoting Haas, 252 Wis. 2d 133, ¶ 14, 643 N.W.2d 771 ). Ultimately, "the burden is on the petitioner ... to demonstrate by a preponderance of the evidence that his detention is illegal." State ex rel. Hager v. Marten, 226 Wis. 2d 687, 694, 594 N.W.2d 791 (1999).
*64 ¶15 A habeas petition filed in the court of appeals under Wis. Stat. § (Rule) 809.51(1) "must contain a statement of the legal issues and a sufficient statement of facts that bear on those legal issues, which *487 if found to be true, would entitle the petitioner to relief." Coleman, 290 Wis. 2d 352, ¶ 18, 714 N.W.2d 900. The statute provides:
(1) A person may request the court to exercise its supervisory jurisdiction or its original jurisdiction to issue a prerogative writ over a court and the presiding judge, or other person or body, by filing a petition and supporting memorandum.... The petition shall contain:
(a) A statement of the issues presented by the controversy;
(b) A statement of the facts necessary to an understanding of the issues;
(c) The relief sought; and
(d) The reasons why the court should take jurisdiction.
Rule 809.51(1).[6] Subsection (2) provides the "court may deny the petition ex parte or may order the respondents to file a response with a supporting memorandum, if any, and may order oral argument on the merits of the petition." Rule 809.51(2).
*65 ¶16 As the respondent, the State may assert equitable defenses such as laches in opposing a habeas petition.[7] "Laches is an equitable defense to an action based on the plaintiff's unreasonable delay in bringing suit under circumstances in which such delay is prejudicial to the defendant." Sawyer v. Midelfort, 227 Wis. 2d 124, 159, 595 N.W.2d 423 (1999). The application of laches to bar habeas petitions is well-established. See Coleman, 290 Wis. 2d 352, ¶¶ 2, 19-25, 714 N.W.2d 900. Although our courts have described the elements of laches in various ways, we concluded in Coleman that the three-element test described in some of our cases "provides the better analytic framework for assessing a laches defense." Id., ¶ 29. Under Coleman, the elements of the defense of laches are: (1) unreasonable delay in filing the habeas petition, (2) lack of knowledge on the part of the State that the petitioner would be asserting the habeas claim, and (3) prejudice to the State. Id., ¶¶ 28-29. As the party asserting the defense, the State bears the burden to raise and prove all elements of the defense. Id., ¶ 2.
C. Application
¶17 The sole issue presented is whether the court of appeals may deny a habeas petition ex parte *66 for the petitioner's failure to plead that his claim was brought in a timely manner. We conclude it may not. Lopez-Quintero's habeas petition was sufficiently pled in accordance with the statutory prescriptions. The petition contained a "statement of the legal issues and a sufficient statement of facts [bearing] on those legal issues, which if found to be true, would entitle [Lopez-Quintero] to relief." See Coleman, 290 Wis. 2d 352, ¶ 18, 714 N.W.2d 900. Lopez-Quintero's petition alleges that he communicated his desire to seek postconviction relief by indicating his intent "to seek *488 postconviction relief" on the Notice of Right to Seek Postconviction Relief form, which his attorney also signed, explicitly acknowledging the attorney's "duty to file the Notice of Intent to Pursue Postconviction Relief."[8] See *67 Wis. Stat. § 973.18(5) (explaining that "[i]f the defendant desires to pursue postconviction relief, the defendant's trial *68 counsel shall file" the notice of intent to pursue postconviction relief). The petition further alleges that he relied on his attorneys to file the notice of intent to pursue postconviction relief, which is a precondition to pursuing an appeal. See Wis. Stat. § (Rule) 809.30(2)(a)-(b). Lopez-Quintero's attorneys failed to do so, depriving him of any opportunity to appeal.[9] *489 Trial counsel's "failure to perfect an appeal when the defendant has indicated a desire to appeal constitutes ineffective assistance of counsel." See State ex rel. Flores v. State, 183 Wis. 2d 587, 615, 516 N.W.2d 362 (1994) (quoted source omitted). Whenever ineffective assistance of counsel results in the "complete denial of appeal, prejudice is presumed." Id. at 620, 516 N.W.2d 362 ; see also Garza v. Idaho, --- U.S. ----, 139 S. Ct. 738, 744, 203 L.Ed.2d 77 (2019) (explaining that "prejudice is presumed 'when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken' " (quoting Roe v. Flores-Ortega, 528 U.S. 470, 484, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) )); Flores-Ortega, 528 U.S. at 477, 120 S.Ct. 1029 (explaining that "[w]e have long held that a lawyer who disregards specific instructions *69 from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable," and " '[w]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit' " (quoted source omitted; third alteration in original)); Strickland v. Washington, 466 U.S. 668, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ("Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice."); Castellanos v. United States, 26 F.3d 717, 718 (7th Cir. 1994) (explaining that "[i]f the defendant told his lawyer to appeal, and the lawyer dropped the ball, then the defendant has been deprived, not of effective assistance of counsel, but of any assistance of counsel on appeal," which is a "per se violation of the sixth amendment"). Because a habeas petitioner need not plead that his petition was filed in a timely manner, we reverse the court of appeals' decision denying Lopez-Quintero's statutorily-compliant petition and remand for further proceedings.
¶18 We begin with an analysis of Wis. Stat. § (Rule) 809.51. Subsection (1) describes what the petitioner must allege in the petition. While the statute requires the petitioner to provide a statement of the issues, a statement of facts, the relief sought, and the reasons the court should take jurisdiction, see Rule 809.51(1)(a)-(d), it does not impose any time limit on when a petition may be brought. Id. Subsection (2) describes what the court of appeals may do upon receipt of the petition. It may deny the petition ex parte or order a response, and it may order oral argument on the merits. Rule 809.51(2). Lack of timeliness is not listed as a basis for denying a petition ex *70 parte.[10] The statute does not impose any deadline within which a petitioner must bring a habeas petition. In the absence of language imposing a time limit on filing a petition for the court of appeals to issue a writ of habeas corpus, we will *490 not read one into the statute.[11] Under the omitted-case canon of statutory interpretation, "[n]othing is to be added to what the text states or reasonably implies (casus omissus pro omisso habendus est ). That is, a matter not covered is to be treated as not covered." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 93 (2012); see also Wisconsin Ass'n of State Prosecutors v. WERC, 2018 WI 17, ¶ 45, 380 Wis. 2d 1, 907 N.W.2d 425 ("Nothing is to be added to what the text states or reasonably implies" (quoting Scalia & Garner, Reading Law at 93)). "One of the maxims of statutory construction is that courts should not add words to a statute to give it a certain meaning." Fond Du Lac Cty. v. Town of Rosendale, 149 Wis. 2d 326, 334, 440 N.W.2d 818 (Ct. App. 1989). Therefore, if habeas petitioners are subject to any sort of timeliness requirement, it must derive from a different source. *71 ¶19 The State maintains that the court of appeals properly denied Lopez-Quintero's habeas petition ex parte. It appears to concede that Wis. Stat. § (Rule) 809.51 contains no timeliness requirement, but it emphasizes that the statute "does not purport to provide a comprehensive treatment of the issue of extraordinary writs" and therefore does not foreclose the imposition of a timeliness requirement as a matter of equity. The State grounds its argument in Smalley, which denied a habeas petition ex parte for failing to allege facts demonstrating that the petitioner sought prompt and speedy relief. Smalley, 211 Wis. 2d at 801-02, 565 N.W.2d 805. The State insists that Lopez-Quintero has not shown that Smalley is objectively wrong; therefore, the State argues, we should reject his invitation to overrule it. We disagree and overrule Smalley.
¶20 In Smalley, the court of appeals denied a habeas petition ex parte because the petitioner "did not timely file his petition." Smalley, 211 Wis. 2d at 796, 565 N.W.2d 805. Because "[t]he purpose of habeas corpus is 'to provide a prompt and effective judicial remedy to those who are illegally restrained of their personal liberty,' " the court of appeals held that Wis. Stat. § (Rule) 809.51(1) requires a habeas petitioner to "allege facts [in the petition] demonstrating that he sought prompt and speedy relief." Smalley, 211 Wis. 2d at 802, 565 N.W.2d 805 (quoting Wohlfahrt, 95 Wis. 2d at 133, 289 N.W.2d 366 ). The court of appeals did not attempt to justify this new pleading requirement under the text of Rule 809.51(1), which contains no such requirement. Instead, the court of appeals invoked the principles of equitable estoppel and laches, which it used to read a timeliness requirement into Rule 809.51(1). Smalley, 211 Wis. 2d at 800, 565 N.W.2d 805. It further reasoned that "[e]quitable remedies are not available to one whose own actions or inactions result in the *72 harm." Id. (quoted source omitted). Without any analysis, but merely highlighting the length of the delay, the court of appeals concluded the State was prejudiced by the "untimely habeas petition." Id. at 803, 565 N.W.2d 805. The court of appeals did, however, clarify that "[w]hether a defendant's claim is made within a reasonable time must be evaluated on a case-by-case basis." Id. at 802, 565 N.W.2d 805.
¶21 Smalley's imposition of a "prompt and speedy" pleading requirement *491 for habeas claims is unsupported either by the statutory text or Wisconsin cases. The equitable cases cited in Smalley offer no support for its extra-textual conclusion that Wis. Stat. § (Rule) 809.51(1) imposes a burden on habeas petitioners to allege that they sought relief in a "prompt and speedy" manner or risk their petitions being denied ex parte under Rule 809.51(2). Under the doctrine of laches, it is the State, not the petitioner, who bears the burden to show laches should be applied to bar a habeas petition. Indeed, in Coleman we recognized the weakness of Smalley's reliance on laches to deny a habeas petition ex parte, thereby relieving the State of its burden to establish the elements of that affirmative defense, when we remarked that Smalley"conflated its analysis of the habeas petition's timeliness with the unreasonable delay element of laches." Coleman, 290 Wis. 2d 352, ¶ 25, 714 N.W.2d 900 (footnote omitted).[12] In a similar vein, equitable *73 estoppel in this context is a defense to be raised by the State, and "[t]he burden of proving the elements of equitable estoppel is on the party asserting it as a defense." See Coconate v. Schwanz, 165 Wis. 2d 226, 231-32, 477 N.W.2d 74 (Ct. App. 1991). Neither doctrine provides any foundation for denying a habeas petition ex parte on the basis that the petitioner failed to allege the petition was made within a reasonable time. Any equitable defense to a habeas petition must be raised and proven by the State, which cannot be done unless the State is required to respond to the petition.
¶22 Smalley's reliance on the general principle that "[e]quitable remedies are not available to one whose own actions or inactions result in the harm" is a *74 similarly unpersuasive justification for its "prompt and speedy" pleading requirement. The quoted precept came from Lohr v. Viney, 174 Wis. 2d 468, 477, 497 N.W.2d 730 (Ct. App. 1993), in connection with that court's application of equitable estoppel. See Smalley, 211 Wis. 2d at 800, 565 N.W.2d 805. Setting aside the unavailability of equitable estoppel to deny a habeas petition ex parte, Smalley's reliance on this language begs the question of what "harm" the petitioner caused. Smalley assumed, with little analysis and no response by the State, that mere delay (which the court of appeals unilaterally deemed unreasonable) necessarily harmed, or prejudiced, the *492 State. Smalley, 211 Wis. 2d at 803, 565 N.W.2d 805. There is no legal footing for this presumption, which led us to reject a similar presumption in Coleman. The court of appeals in Coleman, as in Smalley, put the cart before the horse by concluding the State was prejudiced by the petitioner's delay in seeking habeas relief, without requiring the State to first assert unreasonable delay and then prove it prejudiced the State. As we observed in Coleman, delay does not automatically prejudice the State, which must not only allege prejudice but then prove a factual basis for it. Coleman, 290 Wis. 2d 352, ¶ 36, 714 N.W.2d 900.
¶23 Smalley manufactured the requirement that a habeas petitioner must prove his petition was "prompt and speedy," a precondition not found in Wis. Stat. § (Rule) 809.51(1) or the equitable cases the court cited.[13] Although Coleman recognized that Smalley *75 confused laches with pleading requirements, it overlooked Smalley's mistaken application of Wohlfahrt, which understood that the "function" of habeas corpus "is to provide a prompt and effective judicial remedy to those who are illegally restrained of their personal liberty." Wohlfahrt, 95 Wis. 2d at 133, 289 N.W.2d 366. Smalley turned this purpose for habeas on its head. Rather than safeguarding the liberty interests of a petitioner who was illegally restrained, Smalley misused this language to instead protect the State by imposing a requirement on the petitioner to plead that he sought relief in a prompt and speedy manner.[14] Nothing in the language lifted from Wohlfahrt supports this application.
¶24 With no statutory or common law basis for Smalley's "prompt and speedy" pleading requirement, we decline to impose one. Equity cannot be advanced *76 by denying a statutorily-compliant habeas petition solely because an appellate court deems it to be filed too late, absent the State showing that the delay prejudiced it. As implicitly reflected in the elements of the test for laches, numerous factors may influence the determination of whether it is equitable to bypass the merits of a claim on the basis of unreasonable delay. See e.g., Coleman, 290 Wis. 2d 352, ¶ 29, 714 N.W.2d 900 (explaining that "assessing whether a party raising laches did not have knowledge that the claim would be brought will permit the circuit court to more fully" evaluate "the effect of a claim that has been unreasonably delayed." (emphasis added)). Such considerations cannot *493 be fully vetted by an ex parte review of the petition.
¶25 The parties' differing accounts of the near-ten-year delay in the filing of Lopez-Quintero's petition illustrate why the myriad of facts that could bear on whether it is equitable to bar Lopez-Quintero's statutorily-compliant habeas petition cannot be fully addressed in an ex parte denial. The State accuses Lopez-Quintero of sleeping on his rights. While conceding, as the court of appeals did, that his "stated limitations account for some delay in this case," the State insists that "Lopez-Quintero's lack of English proficiency, lack of education, and lack of familiarity with Wisconsin's criminal justice system" do not account for all of the delay.
¶26 Lopez-Quintero describes in his brief to this court multiple reasons for his delay in seeking habeas relief.[15] In addition to asserting in his verified habeas petition linguistic impediments, limited education, *77 and unfamiliarity with the criminal justice system, Lopez-Quintero delineates in his brief a procedural history that he claims explains the delay. We do not recount, accept as true, or rely upon Lopez-Quintero's assertions concerning his reasons for filing his habeas petition nearly ten years after his appeal rights expired. His account is immaterial to the issue we decide. We merely highlight that the court of appeals never fully addressed the equitable considerations related to the timing of the habeas petition-which would include Lopez-Quintero's proffered reasons for the delay-because it dismissed the petition ex parte. Lopez-Quintero's articulated reasons for his delay in filing his habeas petition are properly considered after the State's assertion of laches in response to the petition, not before.
¶27 The State worries that declining to impose a timeliness requirement for pleading habeas claims undermines the finality of judgments and would allow "a petitioner [to] seek a writ of habeas corpus 50 years after his conviction." The State's fears are unfounded. Laches provides a process to balance the State's concerns regarding the prejudice it could suffer in being forced to respond to decades-old claims, as well as the State's interest in the finality of judgments, against the Great Writ's protection of constitutional rights.[16]
*78 Consistent with our previous decisions, Lopez-Quintero's habeas petition, or any other, may be barred if the State successfully argues laches. The burden to demonstrate why a statutorily-compliant claim for habeas relief should be denied as untimely rests with the party seeking to avoid a substantive review of the issue. Coleman, 290 Wis. 2d 352, ¶ 2, 714 N.W.2d 900 ("The State has the burden of proof in regard to all the elements of its laches defense.") If Lopez-Quintero's delay was unreasonable, the State did not know Lopez-Quintero would bring the claim, and the delay prejudiced the State, then the claim may be barred. See id., ¶ 17 (explaining that once "the defense of laches is proved, whether to apply laches and dismiss the habeas petition *494 is left to the discretion of the court of appeals"). It is the State who bears the burden of proving the elements of laches.
¶28 A petition for habeas corpus constitutes the final opportunity for an individual restrained of his personal liberty to establish that the State's action against him violated our constitutions or other law, after all other avenues for relief are exhausted or shown to be inadequate. Habeas is the people's bulwark against illegal confinement by the government. Bearing in mind that "the overriding responsibility of [the Supreme] Court is to the Constitution of the United States" and of this court, to the Wisconsin Constitution as well, "no matter how late it may be that a violation of the Constitution is found to exist,"[17] the court of appeals cannot forever foreclose an individual's appellate rights, ex parte and on the basis of untimeliness, when his attorneys failed to file the form *79 necessary to initiate the appeal he requested. Absent a demonstration of prejudice by the State, a habeas petition may not be denied merely because it was filed later than the court of appeals believes it should have been.
III. CONCLUSION
¶29 We hold that neither Wis. Stat. § (Rule) 809.51 nor equity imposes a "prompt and speedy" pleading requirement in the filing of a petition for habeas corpus. The equitable defense of laches exists to address any prejudice to the State caused by a petitioner's unreasonable delay in the filing of a habeas petition. A habeas petition may not be denied ex parte solely because the petitioner failed to assert and demonstrate he sought relief in a "prompt and speedy" manner. Instead, the State bears the burden to raise laches as a defense and prove (1) unreasonable delay, (2) lack of knowledge that the petitioner would bring a habeas claim, and (3) resulting prejudice. The State did not do so here because the court of appeals erred in denying the petition ex parte without giving the State the opportunity to respond and prove laches.
¶30 We recognize that "habeas corpus should not be 'made the instrument for re-determining the merits of all cases in the legal system that have ended in detention.' " Rose v. Mitchell, 443 U.S. 545, 581, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979) (Powell, J., concurring in the judgment; quoted source omitted). Our decision is a narrow one and we make no assessment of the merits of Lopez-Quintero's petition, much less the merits of his appeal should the court of appeals reinstate his appellate deadlines; we merely recognize his right to have his statutorily-compliant petition considered without the court of appeals imposing a non-existent timeliness requirement *80 as a basis for denying the petition ex parte.[18] Accordingly, we reverse the decision *495 denying Lopez-Quintero's petition for habeas corpus and remand to the court of appeals for further proceedings on the petition.
By the Court. -The decision of the court of appeals is reversed and remanded.

All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

The dissent contends that Coleman did not abrogate Smalley, but Coleman in fact did abrogate Smalley's erroneous enunciation of the laches test. Coleman explained: "[b]ecause it may be difficult to quantify 'actual prejudice,' we conclude that the three-element analysis of Sawyer and Prihoda provides the better analytic framework for assessing a laches defense than does the two-element analysis set out in McMillian, Smalley and Evans." State ex rel. Coleman v. McCaughtry, 2006 WI 49, ¶29, 290 Wis. 2d 352, 714 N.W.2d 900 (referencing Sawyer v. Midelfort, 227 Wis. 2d 124, 595 N.W.2d 423 (1999) ; State v. Prihoda, 2000 WI 123, 239 Wis. 2d 244, 618 N.W.2d 857 ; State ex rel. McMillian v. Dickey, 132 Wis. 2d 266, 392 N.W.2d 453 (Ct. App. 1986) ; State ex rel. Smalley v. Morgan, 211 Wis. 2d 795, 565 N.W.2d 805 (Ct. App. 1997) (per curiam); and State v. Evans, 2004 WI 84, 273 Wis. 2d 192, 682 N.W.2d 784 ).

"Because the circuit court is unable to provide a remedy for the failure to file a notice of intent to seek postconviction relief ... the court of appeals is the proper forum for claims of ineffectiveness premised on counsel's failure to file a notice of intent." State ex rel. Kyles v. Pollard, 2014 WI 38, ¶ 38, 354 Wis. 2d 626, 847 N.W.2d 805. Accordingly, Lopez-Quintero properly filed his habeas petition, alleging ineffective assistance of counsel based on failure to file a notice of intent, in the court of appeals.

In his petition to the court of appeals for a writ of habeas corpus, Lopez-Quintero asserted he did not speak English and was unfamiliar with the American criminal justice system, which we presume to be the "stated limitations" the court of appeals referenced in its ex parte denial of the petition.

The dissent misapprehends this court's rather limited holding, which simply requires the State to respond to the petition, after which the court of appeals will decide whether to grant it or not, considering any equitable defenses the State may assert. Contrary to the dissent's characterization of this opinion, we do not engage in any factfinding and the petitioner retains the burden of proving the allegations in his petition. The court of appeals denied him the opportunity to do so based on Smalley's misstatement of applicable law.

The dissent would rewrite the statute to additionally require a habeas petitioner who claims his appeal rights were denied to allege "when, where or how [he] specifically directed his trial counsel to appeal." Dissent, ¶58. This heightened "when, where or how" pleading requirement does not appear in the text of the statutes or in any Wisconsin cases.

Although Michael A. Dittmann, the warden of the correctional facility where Lopez-Quintero is confined, is the respondent in this case, see Wis. Stat. § 782.01 (" 'respondent' means the person on whom the writ is to be served"), the Wisconsin Department of Justice represents Dittmann and responds to the petition; therefore, we reference the respondent as the "State." See e.g., Coleman, 290 Wis. 2d 352, ¶¶ 13-15, 31-37, 714 N.W.2d 900 (generally referring to the respondent as the State).

The dissent misjudges Lopez-Quintero's habeas petition as insufficient because he did not allege making "a specific request of counsel to appeal" and accuses the court of "adding facts to the petition" to cure the petition's purported deficiency. Dissent, ¶¶50-51. The dissent is wrong on both counts. Lopez-Quintero checked the box on the Notice of Right to Seek Postconviction Relief form indicating "I plan to seek postconviction relief." He did not check either of the two other options on the form: "I do not plan to seek postconviction relief" or "I am undecided about seeking postconviction relief and I know I need to decide and tell my lawyer within 20 days." One of Lopez-Quintero's attorneys signed this form and acknowledged his responsibility to file a notice of intent to pursue postconviction relief in accordance with Lopez-Quintero's unequivocal wishes. Because Lopez-Quintero explicitly indicated his intent to pursue postconviction relief, his attorneys were obligated to file a notice of intent to pursue postconviction relief under Wis. Stat. § (Rule) 809.30(2)(b). See Wis. Stat. § 973.18(5). This notice was a prerequisite to any postconviction relief, including an appeal. Rule 809.30(2)(a)-(b). The attorneys' inaction in response to Lopez-Quintero's specific instruction to file the notice of intent under Rule 809.30(2)(b) resulted in the "complete denial of appeal," and prejudice is therefore "presumed." See State ex rel. Flores v. State, 183 Wis. 2d 587, 620, 516 N.W.2d 362 (1994). It is this "forfeiture of a proceeding"-here, an appeal-and the "complete denial of counsel" that carries the presumption of prejudice. See Roe v. Flores-Ortega, 528 U.S. 470, 483, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). It is immaterial that Lopez-Quintero indicated his intent to seek "postconviction relief" rather than specifying he wished to appeal; his attorneys' inaction resulted in the complete denial of any postconviction proceedings-including an appeal.
The dissent also faults Lopez-Quintero for failing to explain "why an appeal was not pursued" and speculates that "[p]erhaps after denial of the motion for a new trial, counsel and Lopez-Quintero decided an appeal would not be worth pursuing." Dissent, ¶54. The dissent quotes Flores-Ortega, 528 U.S. at 486, 120 S.Ct. 1029 for the proposition that "evidence that [a defendant] sufficiently demonstrated to counsel his interest in an appeal ... is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal." Dissent, ¶44. But the quoted language in Flores-Ortega did not address Lopez-Quintero's situation, in which his attorneys disregarded his instructions to file a notice of intent to pursue postconviction relief thereby depriving him of his right to appeal, which has long been held to constitute ineffective assistance of counsel. See Flores, 183 Wis. 2d at 620, 516 N.W.2d 362 ("[W]henever the ineffective assistance is such as to deprive one totally of the right to appeal, the prejudice showing is presumed."); see also Flores-Ortega, 528 U.S. at 483, 120 S.Ct. 1029 (explaining that deficient performance leading to the forfeiture of a judicial proceeding is presumed to be prejudicial). Instead, Flores-Ortega considered whether counsel was "deficient for not filing a notice of appeal when the defendant has not clearly conveyed his wishes one way or the other." Flores-Ortega, 528 U.S. at 477, 120 S.Ct. 1029 (emphasis added). Because Lopez-Quintero's petition alleged that he clearly communicated his desire to pursue postconviction relief to his attorneys, the dissent's speculation about why an appeal was never filed is irrelevant. Lopez-Quintero's allegations, if proved, would establish ineffective assistance of counsel. See Flores, 183 Wis. 2d at 620, 516 N.W.2d 362.

The dissent faults Lopez-Quintero for failing to attach an "affidavit" or a "transcript from an evidentiary hearing" to support his claim. Dissent, ¶39. No law supports the proposition that such evidentiary materials are necessary to plead a habeas claim. Under the law governing habeas pleading requirements, the defendant must allege sufficient facts "which if found to be true, would entitle the petitioner to relief." See Coleman, 290 Wis. 2d 352, ¶ 18, 714 N.W.2d 900 (emphasis added). Contrary to the dissent's view of the case, we are at the pleading stage; Lopez-Quintero submitted a sworn petition for habeas corpus attesting that the facts alleged in the petition (including the attachments) were "true and correct." See Wis. Stat. § 782.04 (a petition for habeas corpus "must be verified"). The additional evidentiary materials listed by the dissent may, in some cases, be necessary to prove a habeas claim, but they are not necessary to plead the claim.

Subsection (3) authorizes the court of appeals to grant or deny the petition after considering the petition, responses, supporting memoranda, and argument, and subsection (4) requires a statement identifying compliance with certain formatting requirements for the petition. Wis. Stat. § (Rule) 809.51(3), (4).

We already implicitly recognized the absence of a statutory time limit in Coleman. We explained that, in this respect, Wisconsin's rules on state habeas claims differ from the federal rules, which provide that relief "is available to a state prisoner for only one year after the state conviction becomes final." See Coleman, 290 Wis. 2d 352, ¶ 24 n.5, 714 N.W.2d 900. Wisconsin's rules contain no such limit. Id.

Certain language in Coleman suggests that the timeliness of a habeas petition is a factor to be considered "under the principles that we have set for evaluating habeas petitions." Coleman, 290 Wis. 2d 352, ¶25 n.6, 714 N.W.2d 900. The court in Coleman proceeded to explain that "[t]he foundation for the decision in Smalley becomes readily apparent when the decision places the burden of proof for timeliness of the petition on Smalley, which is in accord with reviewing timeliness in regard to a habeas petition." Coleman, 290 Wis. 2d 352, ¶25, 714 N.W.2d 900. Coleman, however, never identifies the source for the purported timeliness requirement. Other than this unsupported language from Coleman, we discovered no basis in law or equity for the proposition that a timeliness requirement inheres in habeas petitions and the State in this case identifies none. Indeed, the State recognized that only "[s]ince Smalley" has "this Court ... acknowledged that a petitioner seeking a writ of habeas corpus under Wis. Stat. § (Rule) 809.51 has the burden of proof to show the timeliness of his petition." While timeliness must be shown by a party seeking a supervisory writ, see State ex rel. CityDeck Landing LLC v. Circuit Court for Brown Cty., 2019 WI 15, ¶30, 385 Wis. 2d 516, 922 N.W.2d 832, it never was a prerequisite for a habeas petition, until Smalley mistakenly imported the concept into Rule 809.51. Perhaps Coleman's stray references to "reviewing timeliness in regard to a habeas petition" derive from the "prompt and speedy" factor that must be shown by petitioners seeking supervisory writs; the decision does not say. Regardless, the only source for shifting the burden of proof to the habeas petitioner to show timeliness is Smalley, which erroneously conjured this requirement from a statute that is entirely silent on the subject.

The dissent cites State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶ 17, 271 Wis. 2d 633, 681 N.W.2d 110 for the proposition that a habeas petitioner "must show that 'the request for relief [was] made promptly and speedily.' " Dissent, ¶45. Kalal's application of the longstanding "prompt and speedy" requirement applies to supervisory writs, not writs of habeas corpus. See Kalal, 271 Wis. 2d 633, ¶ 17, 681 N.W.2d 110. The dissent confuses the two. Compare id. (supervisory writ will not be granted unless "(1) an appeal is an inadequate remedy; (2) grave hardship or irreparable harm will result; (3) the duty of the trial court is plain and it must have acted or intends to act in violation of that duty; and (4) the request for relief is made promptly and speedily") with State ex rel. Haas v. McReynolds, 2002 WI 43, ¶ 12, 252 Wis. 2d 133, 643 N.W.2d 771 (habeas corpus is available where a party is restrained of his liberty, the restraint was imposed by a body without jurisdiction or contrary to constitutional protections, and there is no other adequate remedy at law).

Smalley quoted Wohlfahrt for the proposition that "[t]he purpose of habeas corpus 'is to provide a prompt and effective judicial remedy to those who are illegally restrained of their personal liberty,' " and concluded in the next two sentences that "Smalley's petition does not allege facts demonstrating that he sought prompt and speedy relief" and "[s]uch a showing is required." Smalley, 211 Wis. 2d at 802, 565 N.W.2d 805 (quoting State ex rel. Wohlfahrt v. Bodette, 95 Wis. 2d 130, 133, 289 N.W.2d 366 (Ct. App. 1980) ).

The State protests that the petition itself did not include the specific reasons for the delay in seeking habeas relief that Lopez-Quintero now presents to this court. Because we conclude that the law does not require habeas petitioners to allege timeliness in their petitions, the purported insufficiency or even the total absence of any explanation in the petition for Lopez-Quintero's delay in filing it is irrelevant.

Laches similarly provides the process to address the dissent's complaint that "it did not take Lopez-Quintero ten years to figure out that no appeal was pending." Dissent, ¶56. Equitable concerns about the near ten-year delay must be addressed after hearing both sides, not in a perfunctory ex parte dismissal.

See Chessman v. Teets, 354 U.S. 156, 165, 77 S.Ct. 1127, 1 L.Ed.2d 1253 (1957).

The court of appeals retains the discretion to otherwise deny habeas petitions ex parte on any grounds available under the law. See Wis. Stat. § (Rule) 809.51(2). Puzzlingly, the dissent asserts that the court "never says why the court of appeals erroneously exercised the discretion the legislature granted to it." Dissent, ¶63. Of course, the entirety of this opinion explains why the court of appeals erred, although we recognize it relied on unsound cases it was bound to apply. The dissent seemingly equates "discretion" with "whim" but of course the exercise of a court's discretion must be grounded in the law, and as we have explained in some detail, ex parte denial of a habeas petition for untimeliness bears no support in law or equity. See State v. Avery, 2013 WI 13, ¶ 23, 345 Wis. 2d 407, 826 N.W.2d 60 (court of appeals "erroneously exercises its discretion when it applies the wrong legal standard"); State v. Martel, 2003 WI 70, ¶ 8, 262 Wis. 2d 483, 664 N.W.2d 69 (explaining that "a discretionary decision that is based upon an error of law is an erroneous exercise of discretion"); see also State ex rel. Singh v. Kemper, 2016 WI 67, ¶ 25, 371 Wis. 2d 127, 883 N.W.2d 86 ("Whether a writ of habeas corpus is available to the party seeking relief is a question of law that we review independently of the determinations rendered by the circuit court and the court of appeals.").